# Tennessee and Coosa Railroad Company v. East Alabama Railway Company.

*Bill in Equity to enjoin Statutory Real Action in the Nature of Ejectment.*

1. *Conveyance of railroad; what are conditions precedent.*—Where a railroad company, incorporated under the laws of, and owning an unfinished railroad in, this State, sold, and executed to another railroad corporation a conveyance of, its right of way, road-bed, grading, etc., the conveyance providing " that this deed is to have effect, and be operative only upon the express condition and understanding," that certain conditions specifically enumerated and set forth therein, requiring, among other things, a completion of the railroad conveyed within a given time, and the issue and transfer by the purchasing company of an amount of its capital stock equal to the paid up stock of the selling company, are complied with by the purchasing company,—*held*, that these conditions are not subsequent, but precedent to the passing of the title intended to be conveyed, and that, the said conditions not having been complied with, and the bankruptcy and dissolution of the purchasing company having rendered performance impossible, by the terms of the

[Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.]

conveyance, the title, as between the contracting parties, did not and could not pass, by reason of the non-performance of the conditions.

2. *Lien under act providing for State aid to railroads, and under deed of trust executed to indemnify the State; extent of.*—Prior to the execution of said conveyance, the purchasing company, being engaged in the construction of its line of road, and contemplating obtaining the State's indorsement of its bonds, under the statute providing for furnishing the aid and credit of the State to railroads (Pamph. Acts, 1868, p. 198; Pamph. Acts, 1869-70, p. 149), had, by deed of trust, conveyed to trustees its property, then owned and thereafter to be acquired, as indemnity to the State against liability to be incurred by the indorsement; and after the purchase, the purchasing company, having finished twenty miles of its original line of road, and also five miles of the line of road purchased by, and conveyed to it, obtained the State's indorsement of its bonds, under the statute, for the number of miles so finished by it. *Held,* that the lien of the State under the statute, and the lien created by the deed of trust were not paramount, but subordinate to the interest and claim of the selling company, reserved by its deed, on the property covered thereby.

3. *Same; when rights of third parties not affected by decree foreclosing.*—Nor were the rights of the selling company in the property covered by said deed impaired or otherwise affected by a decree, obtained on bill in equity filed by the trustees, to which the selling company was not a party, foreclosing the deed of trust, and declaring that the bonds indorsed by the State constituted a prior lien on the railroad, franchises and property of the purchasing company, and that the holders of the bonds were subrogated to the lien and rights of the State, and should be first paid out of the proceeds of sale; or by a sale made under the decree, and a conveyance executed to the purchaser.

4. *Deed with conditions precedent; subsequent purchasers charged with notice of conditions.*—The conveyance executed to the purchasing company, and under which it acquired its rights, expressing on its face the conditions precedent, on the performance of which the title was to pass, this operated as notice to all subsequent purchasers and encumbrancers, including the State.

5. *Written contract; can not be changed by contemporaneous parol agreement.*—While it is a rule of law, that, in the interpretation of a written instrument, the court is permitted to place itself in the situation of the contracting parties at the time of its execution, and to consider the occasion which gave rise to it, the relative position of the parties, and the obvious design they intended to accomplish, this rule can not be so extended as to supplement the writing with proof of a contemporaneous oral agreement, which changes its meaning; and hence, the deed under which the purchasing company in this case acquired its rights, reserving the title in the grantor, as security, at least, until all the conditions contained in the deed are performed, proof of a contemporaneous parol agreement, which would operate to estop the selling company from asserting its title, upon the performance by the purchasing company of only one of such conditions, is inadmissible.

6. *Same; new term can not be added to, by parol.*—It is not permissible, by parol proof, to add a new term to a written contract, not expressed in the writing, but alleged to have been understood and assented to in the negotiation.

7. *Contract by corporation made by board of directors; can not be varied by less than quorum of board.*—A railroad corporation, acting through its board of directors, having made a contract for the sale of its road-bed, etc., that contract can not be varied by any agency less than the power that made it; and hence, no member, or number of members of the board less than a quorum, has authority to add to the contract a new term or condition; nor has a quorum of the directors such authority, unless they are assembled as a board.

|Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.|

8. *Estoppel in pais; what does not operate as.*—One of the conditions of said contract of purchase, and of the deed made in pursuance thereof, being that the purchasing company should pay off and discharge the floating debt of the selling company, not to exceed in amount the sum of $25,000, one-fourth in money, and the balance in its first mortgage bonds, indorsed by the State, and numbered from 320 upwards, that company, after the completion of five miles of the road covered by its deed, delivered to one C., who was a director of the selling company, and its largest creditor (the sum due him being over $20,000), about $6250 in cash, and nineteen of its first mortgage bonds, indorsed by the State on proof of the completion of said five miles of road, valued at $17,100, and numbered from 321 to 339 inclusive. C. had the authority of the president of the selling company for making the collection, and for applying it to his own use; and he retained the money and bonds in his own hands, making no report of what he had done to the company. The board of directors had taken no action in the matter of giving him authority to collect, and it took no action on the use he made of the collection. After the decree was rendered in the foreclosure suit instituted by the trustees in the deed of trust executed to indemnify the State against liability on its indorsement, the nineteen bonds received by C. were, without the selling company's participation or knowledge, proved and allowed in that cause, and the *pro rata* due thereon was paid out of the proceeds of sale. *Held*, that the selling company was not estopped from asserting its title to the property embraced in the deed against the purchaser at the foreclosure sale, on failure of the purchasing company to comply with some of the conditions precedent contained in the deed.

APPEAL from Etowah Chancery Court.

Heard before Hon. N. S. GRAHAM.

The case made by the record appears in the opinion.

DENSON & DISQUE, with whom was SAM'L F. RICE, for appellant. (1) The conditions mentioned in the deed in question are conditions precedent. Such a condition is one that must be performed before any title passes, or estate vests.—1 Black. Com. 2 Bk., *154; 4 Kent's Com. 133; 2 Washb. on Real Property, 3, § 2; 1 Bou. Law Dic., title, "Conditions." Whether a condition is precedent or subsequent, is a matter of construction, which must be determined by, and depend upon the intention of the parties and existing facts, since no technical words are necessary to determine the question.—*Jones v. Sommerville,* 1 Port. 437, 456–7; *Ledyard v. Manning,* 1 Ala. 155; *Finlay v. King,* 3 Pet. 374; 4 Kent's Com. 137; 2 Washb. on Real Prop. 6, § 4; 7 Wait's Act. & Def. 354, *et seq.* Intention is a matter to be determined by the court from an inspection and construction of the deed; and to ascertain the intention of the parties, the court will take into consideration their surroundings, and the objects they had in view in making the contract.—*Broughton v. Mitchell,* 64 Ala. 222; *Maddox v. Pollard,* 28 Ala. 321; *McPherson v. Harris,* 59 Ala. 623; *Evington v. Smith Bros.,* 66 Ala. 398; *Canal Co. v. Hill,* 15 Wall. 94; Broom's Maxims, m. p. 474, 415–16. It is the

[Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.]

province of the *habendum* clause of a deed to define and limit the extent of the ownership and estate in the thing granted. Bouv. Law Dict., title, "*Habendum*." A proviso in a deed is a limitation or exception to a grant made, the effect of which is to declare that the deed shall not operate except in the case provided.—*Carroll v. The State*, 58 Ala. 401, and cases there cited. A stipulation in a deed, that the title shall not vest until the purchase-money is paid, amounts in equity to a mortgage. 1 Jones on Mort. §§ 228–9 ; *Hall v. M. & M. R. R. Co.*, 58 Ala. 22 ; *Pugh v. Holt*, 27 Miss. 461 ; *Moore v. Lackey*, 53 Miss. 85 ; *Carr v. Holbrook*, 1 Mo. 240 ; *Cordova v. Hood*, 17 Wall. 1 ; *King v. Young Men's Asso.*, 1 Woods, 386 ; *White v. Downs*, 40 Texas, 226. In estates upon condition, the happening of the event, or the performance of the condition, that is to create, vest, enlarge, or defeat the estate, operates upon the title, and not upon the possession of the property.— *Verplanck v. Wright*, 23 Wend. 506. It does not follow as a logical or legal sequence, that because the performance of the conditions in the deed must take place subsequent to the possession, that the estate is one upon condition subsequent. The conditions in this deed were to be performed upon the property itself ; possession by the grantee was not inconsistent with the retention of title by the grantor. Here we have the condition in cogent and imperative language, expressed in the face of the deed. According to the authorities *supra*, as well as the following, the deed, *on its face*, shows a condition precedent.—*Rice v. M. & N. R. R. Co.*, 1 Black, 360 ; *Jeffries v. Life Ins. Co.*, 22 Wall. 53 ; *Davis v. Gray*, 16 Wall. 203 ; *Glenn v. U. S.*, 13 How. 250 ; *De Wolff v. Babbett*, 4 Mas. 289 ; *Copland v. Bosquet*, 4 Wash. (C. C.) 588 ; *Taylor v. Rhea*, Minor, 414 ; *Ledyard v. Manning*, 1 Ala. 155 ; *Edwards v. Lewis*, 18 Ala. 495 ; *Sumner v. Woods*, 67 Ala. 139 ; *Cole v. Berry*, 36 Amer. Rep. 511 ; *Goodell v. Fairbrother*, 34 Amer. Rep. 631 ; 1 Black. Com. Bk., 2, \*154 ; 7 Wait's Act. & Def. 354. And when considered in the light of the surroundings of the parties, and in view of their intentions and purposes, it is clear that the conditions of the deed are precedent, and they never having been performed, the property never belonged to the E. A. & C. R. R. Co. Cited in argument : *Thomas v. Railroad Co.*, 101 U. S. 71 ; *York & M. R. R. Co. v. Winans*, 17 How. 30 ; *Bankhead v. Owens*, 60 Ala. 466 ; *Cordova v. Hood*, 17 Wall. 5 ; *Noonan v. Bradley*, 9 Wall. 395. Equity can afford no relief for failure to perform a condition precedent, and such failure is an inevitable bar to a recovery by the appellee in this case.—*Davis v. Gray*, 16 Wall. 229 ; *Giddings v. Ins. Co.*, 102 U. S. 111 ; *Edwards v. Lewis*, 18 Ala. 495 ; 4 Kent's Com. 137 ; *Dumpor's case*, 1 Smith's Lead. Cases, (6th Ed.) 103. (2) The appellant, by its deed,

retaining the title, the act of February 21st, 1870 (Pamph. Acts, 1869–70, p. 149), known as the "State Aid Law," did not, *proprio vigore*, displace appellant's prior claims and rights, and subordinate them to the lien of the State, by reason of the indorsement of the bonds by the State. The lien of the State, created by its indorsement, has only the scope and operation of a mortgage, or other encumbrance between individuals, and its operation and force are ascertained by the same rules and principles as mortgages, etc., between individuals.—*Colt v. Barnes*, 64 Ala. 121 ; *State v. Cobb*, 64 Ala. 156 ; *Curran v. Arkansas*, 15 How. 304 ; *U. S. Bank v. Planters' Bank*, 9 Wheat. 907 ; *U. S. Bank v. Metropolis Bank*, 15 Pet. 377 ; *Fletcher v. Peck*, 6 Cr. 133 ; *Dorman v. State*, 34 Ala. 216 ; *Carver v. Jackson*, 4 Pet. 86. The State can not take property from one and give it to another.—*People v. Bacthellor*, 53 N. Y. 128 ; *Taylor v. Porter*, 40 Amer. Dec. 274 ; *Osborn v. Nicholson*, 13 Wall. 662. The deed of trust to Barnes & Clews, as also the lien of the State, operated upon, and attached to, only such interest in the property as the E. A. & C. R. R. Co. acquired under such conditional sale and deed.—*Fosdick v. Schall*, 99 U. S. 235 ; *U. S. v. N. O. R. R. Co.*, 12 Wall. 362 ; 1 Jones on Mort. §§ 229–30 ; *Sumner v. Wood*, 67 Ala. 139 ; *Shorter v. Frazer*, 64 Ala. 80. It is a universal rule that when a grantor enters for condition broken, he becomes seized of his first estate, such entry defeats the livery made on the conditional estate, and all subsequent estates dependent thereon, and avoids and annuls all subsequent or intermediate charges, encumbrances and estates. The law considers the grantor in, and seized of his former estate.—4 Kent's Com., m. p. 126 ; *Morris v. Bebee*, 54 Ala. 308 ; *Collins v. Whigham*, 58 Ala. 438 ; Tyler on Eject., 179 ; *Dumpor's case*, 1 Smith's Lead. Cases, *supra; Barker v. Cobb*, 36 N. H. 344. . This entry has been made, and suit brought for the recovery of the property. But in this State there is no necessity to enter for conditions broken, before bringing an action.—Code of 1876, § 3232 ; *Cowell v. Springs Co.*, 100 U. S. 55. (3) The appellant did not waive its right to insist upon a performance of the remaining conditions of said deed, by agreeing in the deed to receive certain bonds of the E. A. & C. R. R. Co., indorsed by the State, numbered from 320 upwards, in part performance of the first condition mentioned in said deed. It is attempted to aid this idea of a waiver by an alleged parol understanding set up in the bill. This can not be done. It is a universal rule of law, that whenever a party claims under a deed, or any other written instrument, and makes the same an exhibit to his bill as a muniment and source of title, he can not be heard to allege anything against the terms, conditions, limitations, title and estate created by said

deed; and he can not be permitted to allege any matter that will add to, impair, vary, extend, or explain said instrument or deed, unless he files a bill, with proper allegations of fact, to reform the same.—*Dillon v. Barnard*, 21 Wall. 437; *Terry v. Keaton*, 58 Ala. 670; *Paysant v. Ware*, 1 Ala. 160; *Gould v. R. R. Co.*, 91 U. S. 536. This is based upon the general rule, that when a contract is reduced to writing, such written memorial is the sole expositor of its terms, and can not be varied by parol evidence, unless it be made to appear that, by mistake it does not speak the intent of the parties, or unless the party has been induced to enter into it by the fraudulent representations of the other. All previous conversations, verbal agreements, contemporaneous and antecedent negotiations are merged in the writing. It is the sole expositor of the intentions and terms of the trade.—*Broughton v. Mitchell*, 64 Ala. 222; *Couch v. Woodruff*, 63 Ala. 467; *Winston v. Browning*, 61 Ala. 80; *Gliddings v. Harrison*, 59 Ala. 481; *Ware v. Cowles*, 24 Ala. 446; *Cole v. Spann*, 13 Ala. 537; *Bank of Mobile v. M. & O. R. R. Co.*, 69 Ala. 305; *Dillon v. Barnard*, 21 Wall. 437; *Ins. Co. v. Mowry*, 96 U. S. 547; 1 Brick. Dig. p. 865, §§ 866–8. See also *Johnson v. Sellers*, 33 Ala. 265; *Brown v. Wiley*, 20 How. 442; *Moran v. Prather*, 23 Wall. 492; *Hutchinson v. Patrick*, 22 Tex. 318; *Kimm v. Weippert*, 2 Am. Rep. 541; *Sanford v. Howard*, 29 Ala. 684; *Hughes v. Wilkinson*, 35 Ala. 453; *Holley v. Younge*, 27 Ala. 204; *Mead v. Steger*, 5 Port. 498; *Long v. Davis*, 18 Ala. 801; *Walker v. Clay*, 21 Ala. 797; *Melton v. Watkins*, 24 Ala. 433; *Cowles v. Townsend*, 31 Ala. 133; *Hart v. Clark*, 54 Ala. 490. But the doctrine of waiver here asserted is but another form of the doctrine of estoppel *in pais*.—*Ins. Co. v. Wolff*, 95 Wall. 326. The general principles underlying the doctrine of estoppel *in pais* discussed, with the following citations of authorities: *Hunley v. Hunley*, 15 Ala. 92; *Carter v. Darby*, 15 Bla. 696; *Pounds v. Richards*, 21 Ala. 424; *Steele v. Adams*, 21 Ala. 539; *Overdeer v. Wiley*, 30 Ala. 709; *Traun v. Keiffer*, 31 Ala. 144; *Plant v. Voegelin*, 30 Ala. 162; *Miller v. Hampton*, 37 Ala. 348; *Brant v. Virginia Coal Co.*, 93 U. S. 326; *Ins. Co. v. Wolff*, 95 U. S. 326; *Brinckerhoof v. Lansing*, 8 Am. Dec. 538 (4 Johns. Ch. 66); 2 Smith's Lead. Cases (6th Ed.) 743; 6 Wait's Act & Def. 680–2; *Witter v. Dudley*, 42 Ala. 622; *Crest v. Jack*, 27 Am. Dec 355; *Ware v. Cowles*, 24 Ala. 449; *Russell v. Place*, 94 U. S. 606; *Drake v. Foster*, 28 Ala. 650; *Malloney v. Horan*, 10 Am. Rep. 335. It is an unquestionable rule of law, that this doctrine of estoppel must arise in the transaction itself, and be the proximate cause of the indorsement by the State.—*Hardy v. C. Bank*, 34 Am. Rep. 332; *Ins. Co. v. Mowry*, 96 U. S. 547; *Ketchum v. Dun-*

*can,* 96 U. S. 666; *Ins. Co. v. Wolff,* 95 U. S. 333; *Ware v. Cowles,* 24 Ala. 449; *Steele v. Adams,* 21 Ala. 540; *Brinckerhoof v. Lansing,* 8 Am. Dec. 538; 2 Smith's Lead. Cases (6th Ed.) 746. It must also appear, in this case, that the matter set up as an estoppel was made to bring about the indorsement of the bonds by the State, and that such indorsement would not have been made, but for the matter of estoppel.—*Miller v. Hampton,* 37 Ala. 348; *Plant v. Voegelin* 30 Ala. 162; *Drake v. Foster,* 28 Ala. 650; *Jones v. Cowles,* 26 Ala. 615; *Ware v. Cowles,* 24 Ala. 446; *Pounds v. Richards,* 21 Ala. 424; *Ins. Co. v. Wolff,* 95 U. S. 333; *Malloney v. Horan,* 10 Am. Rep. 335; 2 Smith's Lead. Cases (6th Ed.) 747; 6 Wait's Act. & Def. 680. Whether the deed of appellant to the E. A. & C. R. R. Co. was recorded or not, at the time the State indorsed the bonds, is immaterial, as it was charged with notice of the deed and of its legal construction.—*U. S. v. R. R. Co.,* 12 Wall. 362; *Musich v. Shearer,* 49 Ala. 226; *Witter v. Dudley,* 42 Ala. 616; *Johnson v. Thweatt,* 18 Ala. 741; *Shorter v. Frazer,* 64 Ala. 81; *Center v. Bank,* 22 Ala. 743; *Corbitt v. Clenny,* 52 Ala. 480; *Graff v. Castleman,* 16 Am. Dec. 754, and note; *Lodge v. Simonton,* 23 Am. Dec. 36, and note; *Cordova v. Hood,* 17 Wall. 1; Her. on Es. § 233; 1 Jones on Mort. §§ 228–9. Whether or not there was a waiver in this case, is a matter of intention, as well as of action; and intentions can never be established and be made available against an established rule of law, and the legal operation of the deed. *Brown v. Wiley,* 20 How. 442; *Dillon v. Barnard,* 21 Wall. 437; *Isham v. Morgan,* 23 Am. Dec. 361; *McPherson v. Harris,* 59 Ala. 620; *Kinm v. Weippert,* 2 Am. Rep. 544; *Couch v. Woodruff,* 63 Ala. 471; *Paysant v. Ware,* 1 Ala. 160. Nor can there be a waiver of the conditions in this deed, except upon an express contract, based upon a valuable consideration.—*University v. Walden,* 15 Ala. 658; *Drake v. Reed,* 4 Stew. & Port. 192; *Hunt v. Barfield,* 19 Ala. 117; *Pounds v. Richards,* 21 Ala. 424; *DuBose v. Marx,* 52 Ala. 506; *Johnson v. Sellers,* 33 Ala. 271; *Pugh v. Davis,* 96 U. S. 337. What a party believes or understands to be the operation or effect of a contract can not control its construction, unless such understanding or belief was induced by the conduct or declaration of the party.—*Bank v. Kennedy,* 17 Wall. 20; *Bailey v. Railroad,* 17 Wall. 97; *Dillon v. Barnard,* 21 Wall. 437; *Johnson v. Sellers,* 33 Ala. 265. Mr. Barnes' testimony fails to establish the alleged agreement, set up in the sixth paragraph of the bill; and his testimony does not amount to an estoppel.—*Insurance Company v. Mowry,* 96 U. S. 546. The testimony, to show such an agreement, must be as strong and convincing as is necessary to reform, or to specifically en-

force a contract. This is never done, when the evidence leaves the matter in doubt.—*Clark v. Snodgrass*, 66 Ala. 233 ; *Dozier v. Mitchell*, 65 Ala. 518; *Clark v. Hart*, 57 Ala. 390; *Hinton v. Ins. Co.*, 63 Ala. 488; *Utley v. Donaldson*, 94 U. S. 48; *Howard v. Carpenter*, 11 Md. 259. These principles applied to the pleadings and evidence in this case. (4) The appellant is not estopped because it transferred to Hugh Carlisle the bonds delivered to it by the E. A. & C. R. R. Co., indorsed by the State, and that Carlisle or his transferee has drawn money on said bonds, which money arose in part from the sale of the property in question under the order of the chancery court. The pleadings and testimony discussed on this point. The proceedings in said court amounted to no more than selling the E. A. & C. R. R. Co.'s interest in the property ; and "it is difficult to see where the doctrine of estoppel comes in." *Brant v. Coal Co.*, 93 U. S. 326; *Ware v. Cowles*, 24 Ala. 446; *Jones v. Cowles*, 26 Ala. 612; *Doe, ex dem. Taylor v. Johnson*, 1 Starkie, 411. No act of Carlisle could estop or bind the appellant; he was dealing with the bonds as his property.—Kerr on Frauds, 262; *Com. Bank v. Cunningham*, 35 Am. Dec. 322; *Bernard v. Campbell*, 14 Am. Rep. 289; *Meyer v. Hornby*, 101 U. S. 728. The appellant never ratified Carlisle's action in this respect; but, on the contrary, warned the parties before the sale was confirmed, and when they could have withdrawn, that the appellant claimed the property. This was sufficient notice to them that Carlisle's action was not approved by the appellant, and it would not be bound by it.—*Grimstone v. Carter*, 24 Am. Dec. 230 ; *Lighty v. Shorb*, 24 Am. Dec. 334. The bonds were transferred to Carlisle before there was any breach of the condition ; and the appellant never received one cent of the money arising from the sale. (5) Nor is the appellant precluded from a recovery by the proceedings in the Bankrupt Court at Montgomery, and in the Chancery Court at Opelika. It was not a party to the proceedings in either court; its rights and claims to the property were not litigated in either court, and said proceedings are, as to it, *res inter alios acta*. This point discussed, and the following authorities cited in argument: Cooley's Con. Lim. 353 ; *Gilbreath v. Jones*, 66 Ala. 129; *Russell v. Place*, 94 U. S. 606; *Ins. Co. v. Tisdale*, 91 U. S. 238; 1 Brick. Dig. p. 802, § 93 ; *Yeatman v. Savings Bank*, 95 U. S. 764 ; *Eyster v. Gaff*, 91 U. S. 521; *Jerome v. McCarter*, 94 U. S. 734 ; *Humes v. Scruggs*, 64 Ala. 47; *Newlin v. McAfee*, Ib. 365 ; *Smith v. Perry*, 56 Ala. 268 ; *Lazear v. Porter*, 7 Reporter, 206 ; *Steele v. Adams*, 21 Ala. 540 ; *Brinckerhoof v. Lansing*, 4 Johns. Ch. 65 ; *Crest v. Jack*, 27 Am. Dec. 353 ; *Kennedy v. Brown*, 61 Ala. 296 ; *Fore v. McKenzie*, 58 Ala. 115. (6) The failure of

28

[Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.]

the appellant to commence an action to recover the property at an earlier date, is no evidence of an acquiescence in any of the proceedings mentioned as an estoppel. The action was commenced within ten years from the first breach ; its deed was recorded 5th December, 1871 ; and the record shows that its rights were known in each and every instance when they were attempted to be interfered with. The appellant is not precluded by silence or acquiescence.—*Sloan v. Frothingham*, 65 Ala. 593 ; 2 Smith's Lead. Cases, (6th Ed.) 768 ; 2 Story's Eq. Jur. § 1546 ; *Colbert v. Daniel*, 32 Ala. 328 ; *Steele v. Adams*, 21 Ala. 540 ; 4 Johns. Ch. 66 ; 27 Am. Rep. 353 ; *Perry v. Davis*, 3 C. B. (N. S.) 768 ; 3 Washb. on Real Prop. (4th Ed.) 78.

H. C. SEMPLE, *contra.* (1) It is insisted for the appellee that, under the allegations of the bill, the contract between the T. & C. R. R. Co. and the E. A. & C. R. R. Co., evidenced by the proposal of purchase made by the latter company, and the deed made by the former company, was, in effect, a stipulation between them, that the E. A. & C. R. R. Co. should obtain the State's indorsement of the bonds from 320 upwards, in respect of the completion of the five miles from Attalla to Gadsden, and, when obtained, should deliver them so indorsed to the T. & C. R. R. Co., as it afterwards did, in part payment of the consideration stipulated for in the deed. It may be that the proposal of purchase, and the deed, of themselves, do not make this clear ; but the allegations in the bill of the contemplation and understanding of the parties as to the indorsement of the first set of $320,000, in respect of the first twenty miles, and the stipulation for payment out of the second set, to be numbered from 320 upwards, makes it as entirely clear as if it had been set out in terms in the deed, that the indorsed bonds, to be delivered to the T. & C. R. R. Co., should be bonds indorsed by the State, in respect of the five miles to be completed from Gadsden to Attalla. If it had been so set out in the deed, we suppose that the equity of the bill could not be disputed ; but it is insisted by appellant that, as we claim *under the deed* from the T. & C. R. R. Co , we can not be heard to allege any thing *repugnant to, or inconsistent with it.* We say, however, that, as the deed does provide for the reception of first mortgage indorsed bonds of particular numbers, from 320 upwards, we only *explain the meaning of the terms of the deed, obscure in themselves*, by showing the knowledge and contemplation of the parties thereto, of the relation of the numbers of the two sets of bonds referred to therein, viz, those numbered from 1 to 320, which appellant was not to receive, and those numbered from 321 upwards, which the appellant was to receive, and did

receive. *Pollard v. Maddox*, 28 Ala. p. 325, lays down the law very clearly, under the circumstances of this case, and is the only authority necessary to be referred to. It is not asked that the court should adopt any construction of the deed and proposal, *repugnant to the terms of the deed*, but that, when it comes to consider the meaning of the stipulation in the contract, or proposal and conveyance, for payment in bonds to be indorsed by the State "from 320 upwards," it will, in the language of Chilton, C. J., in *Pollard v. Maddox, supra,* "place itself in the situation of the contracting parties, at the time of executing the instrument ;." and that, when " thus considered," it will say, whether the meaning of the conveyance is not such as is alleged in the bill ; and that it is not repugnant to any of its terms, but that the allegation of the situation and knowledge of the parties, made in the bill, does "illustrate " the meaning of the terms of the contract.　　When thus put in their situation, can there be a doubt, that they stipulated for obtaining the State's indorsement, in respect of the five miles from Attalla to Gadsden ; and that a portion of such bonds should be delivered to them ?　It seems to me, that the inquiry as to the equity of the bill may be limited to this : Did the T. & C. R. R. Co. stipulate for payment in bonds, to be indorsed for the E. A. & C. R. R. Co. by the State, in respect of the road from Gadsden to Attalla ; did the State indorse such bonds ; and were they delivered to, and accepted by the T. & C. R. R. Co. in pursuance of such stipulation ; and is it equitable that those who claim under a sale and purchase, under the very lien thus stipulated to be created by the contract and conveyance, should be disturbed in their possession by those, under whose stipulation the lien was created.　This seems to me to be so conclusive of the equity of the bill, that I have not attempted to treat it in any other aspect.　Nor shall I consider the argument as to whether the deed creates a title upon a condition "subsequent," or whether the condition is "precedent," or whether it was a mere "conditional sale."　This is immaterial, if the case rests upon the solid ground of equity, on which I have placed it. (2)　The evidence discussed at length, for the purpose of showing that the allegations of the bill are sustained thereby.　(3) As to the validity of the indorsement of the bonds by the State, the following authorities cited and discussed: *Chambers Co. v. Clews*, 21 Wall. p. 321 ; *Lynde v. The County*, 16 Wall, p. 13 ; *Knox v. Aspinwall*, 21 How. 539 ; *Mercer Co. v. Hacket*, 1 Wall. 83 ; *Meyer v. Muscatine*, 1 Wall. 384 ; *Gelpcke v. Dubuque*, 1 Wall. 175.

STONE, J.—The appellant railroad corporation was chartered by act of the legislature of Alabama in 1844, and was organized under its charter soon afterwards.　Its object was to

construct, equip and operate a railroad, connecting the waters of the Tennessee and Coosa rivers; Guntersville on the Tennessee and Gadsden on the Coosa being its terminal points. The company expended some three hundred thousand dollars, chiefly in grading its line, and in procuring cross-ties and bridge-timbers, when, at the breaking out of the civil war, its available funds were exhausted. At that time—1861—most of its road-bed had been graded, and the right of way had been secured to a considerable portion of its surveyed track. No part of the track had been laid, and, consequently, no part of the road had been completed. The enterprise remained in this condition until 1871, keeping up its organization, but doing no work.

The East Alabama and Cincinnati Railroad Company was incorporated afterwards, and had commenced the construction of its road at Opelika, extending northward—Guntersville on the Tennessee river being one of its objective points. It was being constructed with a view of obtaining the State's indorsement of its bonds, under the "act to establish a system of internal improvement in the State of Alabama," approved February 19th, 1867—Pamph. Acts, 686,—and the amendment thereof, approved September 22d, 1868.—Pamph. Acts, 198.

Such being the status of the two corporations, the latter proposed a purchase of the former, stating in writing the terms on which it proposed to make the purchase, and the obligations it proposed to enter into. This offer was submitted to the board of directors of the Tennessee and Coosa Rivers Railroad Company, and, by a resolution, that company accepted the same, and instructed its president to close the contract by a conveyance. The conveyance was executed, bearing date July 12th, 1871. It recites the offer made by the East Alabama and Cincinnati Railroad Company, its acceptance by the Tennessee and Coosa Rivers Railroad Company, and then conveyed to the purchasing company its right of way, franchise, road-bed, grading, and all else it had constructed and procured, in the work of building its railroad, with apt words of bargain and sale. The deed, however, contains the following clause, which is but a reiteration of the terms of the offer to purchase, which, being accepted, constituted the agreement of sale: "Provided, however, that this deed is to have effect and be operative only upon the express condition and understanding, that the said 'The East Alabama and Cincinnati Railroad Company' shall commence work on said line, so above conveyed, at Gadsden within seventy days from the said twenty-sixth day of June A. D. 1871, and that the road shall be completed from Gadsden to Attalla by the first day of October next, and thirteen miles from Gadsden on to the foot of Sand Mountain by the first day of January, 1872, and the whole road in two years from the first

day of October, 1871. The bonds of said company, to be indorsed by the State, to be taken at market value, not to be less than ninety cents on the dollar, and the money paid in seventy days from the delivery of this deed. The said The East Alabama and Cincinnati Railroad Company is to issue stock of The East. Alabama and Cincinnati Railroad Company for the paid up stock of the said The Tennessee and Coosa Railroad Company, not to exceed fifty thousand dollars; and provided that the said The East Alabama and Cincinnati Railroad Company shall ratify and approve the contract made by Colt, Boyle & Co. with J. L. Pennington, president, for building the remainder of the East Alabama and Cincinnati railroad from the city of Eufaula . to Guntersville—said stock not to be issued until the road is completed to the foot of Sand Mountain, as above specified." One of the stipulations of the offer of purchase, which the Tennessee and Coosa Rivers Railroad Company accepted, and which is expressed in the deed, is, that "the E. A. & C. R. R. Co. shall pay off and discharge the floating debt of the T. & C. R. R. Co., not to exceed in amount the sum of twenty-five thousand dollars, one-fourth in money, and the remainder in first mortgage bonds of said company, indorsed by the State of Alabama, numbering from 320 upwards." In the written offer of purchase, the clause last above copied immediately precedes the clause first above copied.

One outside fact should here be stated, as an argument, hereafter to be considered, is based upon it. When this trade was consummated—July 12th, 1871—the East Alabama and Cincinnati Railroad Company had commenced building its road by laying track, beginning at Opelika, and extending northward. It had well nigh finished twenty continuous miles, and it was expected the twenty miles would be completed in a very short time. That done, and proof of it being made, the company would receive the State's indorsement of its first mortgage bonds to the extent of three hundred and twenty thousand dollars—being three hundred and twenty of its first mortgage bonds of one thousand dollars each, numbered from 1 to 320 consecutively. From Gadsden to Attalla is five miles. This section, though not in continuation of the twenty miles first constructed, is, it will be remembered, that part of the line purchased from the Tennessee and Coosa Rivers Railroad Company, which, by the terms of the contract, the purchasing company bound itself to construct by the first day of October, 1871. That section would and did connect Gadsden with the Alabama and Chattanooga railroad then being built; now known as the Alabama Great Southern.

Under this contract, the East Alabama and Cincinnati Railroad Company completed its road, beginning at Opelika, and

extending northward twenty miles, and obtained the State's indorsement of the first three hundred and twenty of its first mortgage bonds of one thousand dollars each.    It also built and ironed the five miles of road from Attalla to Gadsden before October 1st, 1871.    And, with the authority of the president of the Tennessee and Coosa Rivers Railroad Company, one Carlisle, some time in November or December, 1871, received from the East Alabama and Cincinnati Railroad Company, some cash, less than six thousand two hundred and fifty dollars; the precise sum not definitely shown. . He also received nineteen of the first mortgage bonds of the E. A. & C. R. R. Co., indorsed by the State of Alabama, valued at seventeen thousand and one hundred dollars—being at the rate of ninety cents in the dollar.    No other payment was ever made, and no work has been done on the Tennessee and Coosa Rivers railroad since the completion of the road from Attalla to Gadsden.    The rest of the track remains in the condition it was in when the purchase was made, July 12th, 1871.

Carlisle, who received the money and bonds, was a director of the Tennessee and Coosa Rivers Railroad Company, and its largest creditor; the sum due him being over twenty thousand dollars.    He had the president's authority for making the collection, and for applying it to his claim against the company. He made no report to the company of what he had done, but retained the money and bonds in his hands.    The board of directors had taken no action in the matter of giving him authority to collect, and it took no action on the use he made of the collection.    The bonds he received were numbered from 321 to 339 inclusive, and the the State's indorsement of them had been obtained, on proof of the completion of the five miles of track from Attalla to Gadsden.

In 1870, before the sale of the franchise and property of the Tennessee and Coosa Rivers Railroad Company to the East Alabama and Cincinnati Railroad Company, the latter company had conveyed its property, owned and to be acquired, to trustees, as security to the State against liability to be incurred by the indorsement of the railroad's bonds.    This, under the statutes which declared a first lien on such property, in indemnification of the State against loss on account of such indorsement. Pamph. Acts, 1869–70, p. 149 ; Pamph. Acts, 1868, p. 198.

As we have said, the East Alabama and Cincinnati Railroad Company never did any work on the line of the Tennessee and Coosa Railroad Company, after completing the five miles from Attalla to Gadsden.    The E. A. & C. R. R. Co. became bankrupt, and, under a decree of the court in bankruptcy, all its rights and property were sold at bankrupt sale, reserving the paramount rights of the trustees, the State, and first mortgage bond-holders.

[Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.]

The Tennessee and Coosa Rivers Railroad Company's rights were not considered in that proceeding, nor was that company made a party. The purchasers at bankrupt sale took possession, and, under their management, the road was operated for some time. We need not state or consider the bankrupt proceedings at greater length, for it is not contended they should exert any influence in the decision of the questions presented by this record.

After this, the trustees named in the mortgage or assignment made by the E. A. & C. R. R. Co. to secure the State against its indorsement, filed a bill to obtain a foreclosure of the mortgage, and a sale of the railroad, its franchise and property, for the benefit of the bond-creditors of the road. The Tennessee and Coosa Rivers Railroad Company, which had all the while kept up its corporate organization, was not made a party to that suit, and never appeared, or took part in the litigation. A decree was rendered, condemning the mortgaged property to sale, and declaring that the bonds having the State's indorsement had a prior lien, that the holders of them were subrogated to the lien and rights of the State, and that they should be first paid out of the proceeds. The decree further provided for proper notice by publication, and that the creditors should come in and prove their claims.—*Colt v. Barnes*, 64 Ala. 108. Many claims were proven and allowed, and among them the nineteen bonds which had been paid by the company to Carlisle, described above. Whether this claim was preferred by Carlisle, or by his transferee, is a question on which the witnesses are not agreed; but whether by the one or the other, it received its *pro rata* share in the disbursement. Nothing was realized, except on the claims evidenced by the indorsed bonds; and the final dividend distributed to the holders of them was less than thirty per cent.

Under this decree of foreclosure, the entire railroad, its franchise and property of every kind, was sold, and purchased by persons who are not shown to have had personal knowledge of any claim asserted by the Tennessee and Coosa Rivers Railroad Company, until after they had paid the purchase-money, received a conveyance, and been put in possession. They thereupon re-incorporated themselves under the statute, taking the name of the East Alabama Railway Company, and have since owned and operated the road in that name.

In June, 1880, the Tennessee and Coosa Rivers Railroad Company instituted its statutory real action for the recovery of the right of way and road-bed it had conveyed to the East Alabama and Cincinnati Railroad Company, against the parties in possession. Thereupon the East Alabama Railway Company filed this bill, and obtained an injunction against the further prosecution of that suit. On the final hearing, the chancellor

granted the relief prayed, and made the injunction perpetual. From that decree the present appeal is prosecuted.

The conveyance made by the T. & C. R. R. Co. to the E. A. & C. R. R. Co. is upon certain enumerated conditions. Are these conditions precedent or subsequent? The language of the conveyance is, "that this deed is to have effect, and be operative, only upon the express condition and understanding," that the enumerated conditions are complied with by the purchasing company. Those conditions related, in part, to a completion of the railroad within a given time, and to the issue and transfer of certain stock in the new company, co-extensive with the paid up stock in the selling company. The bankruptcy and dissolution of the purchasing company, without complying with these conditions, have rendered their performance impossible. We hold that the conditions in the contract we are considering are what are called precedent, and that, by the terms of the conveyance, the title, as between the contracting parties, did not and could not pass, by reason of the non-performance of the conditions.—7 Wait's Ac. & Def. 356; 1 Jones on Mort. § 228; *Hall v. M & M. Railway Co.*, 58 Ala. 10; *Pugh v. Holt*, 27 Miss., 461; *Heist v. Baker*, 49 Penn. St. 9; *Carr v. Holbrook*, 1 Mo. 240.

It is unquestionably true, that the complainant in the present bill is subrogated to all the rights of the State, under the statute and deed of trust thereunder.—*Colt v. Barnes*, 64 Ala. 108; *Forrest v. Luddington*, 68 Ala. 1. It is contended for appellee that under the statute "to furnish the aid and credit of the State of Alabama for the purpose of expediting the construction of railroads within the State," approved February 21, 1870—Pamph. Acts, 149—, the bond-holders had a first lien on the whole road, and that that lien is paramount to the claim of the T. & C. R. R. Co. The language of the statute is, "that so soon as the Governor, on the part of the State, shall indorse the bonds of any company, embraced in the provisions of this act, said indorsement shall constitute a first lien upon the section or sections of said road as far as completed, including road-bed, superstructure and equipment, and the franchise of the company granted by this State, or under its authority." We can not assent to the soundness of this argument. What we understand to be the true interpretation of the clause above copied is, that, as between the State and the railroad corporation procuring the indorsement, the State shall have the first, or paramount lien. It may have had a wider intent, and purposed that the State's indorsement should not be given to the bonds of a railroad, whose franchise or property was under a prior mortgage or incumbrance. It did not and could not mean that the State, by indorsing the bonds of a railroad cor-

[Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.]

poration, acquired a first lien on the track and right of way on which the mortgaging company may have placed its superstructure, whether it owned such track and right of way or not. It did not and could not intend that by laying its track on lands not its own, the railroad corporation could give to the State a lien—a first lien—on property not its own. Private rights can not be devested in that way. The proceedings and proofs by which railroad companies obtained the State's indorsement of its bonds, was a matter entirely between such companies and the State officials. Outside parties had no right or power to intervene. To hold that by such proceedings the property rights of strangers to the record, who had no notice, and could not be heard, would be thereby forfeited, would be to take private property without compensation, and without due process of law.—Decl. of Rights, §§ 7, 24. We need scarcely cite authorities in support of this.—See *Zeigler v. S. & N. Railroad Co.*, 58 Ala. 594; *Wilburn v. McCalley*, 63 Ala. 436, and citations.

There is another view of this question. The mortgage or trust deed, under the foreclosure of which the present claimants purchased and assert title, was executed before the sale was made by the T. & C. R. R. Co. to the E. A. & C. R. R. Co. Now, although that conveyance would and did carry with it, and fasten a lien on all property afterwards purchased and acquired by the latter company in the construction of its road, the lien would attach to the property thus acquired, only to the extent the mortgagor's rights attached by the purchase. *Meyer v. Johnston*, 53 Ala. 237; s. c. 64 Ala. 603. The conveyance under which the purchasing company acquired its rights, as we have shown, expressed on its face the conditions precedent, on the performance of which the title was to pass. This being shown in the very title papers, was notice to all purchasers and incumbrancers coming afterwards.—*Dudley v. Witter*, 46 Ala. 664. And the State is not exempt from the operation of this principle, when itself becomes a party to a contract.—*State ex rel. v. Cobb*, 64 Ala. 127–156; *Bank v. Gibson*, 6 Ala. 814; *Owen v. Br. Bank*, 3 Ala. 258.

It will be remembered that in the contract of sale and purchase, the E. A. & C. R. R. Co. agreed to pay to the T. & C. R. R. Co. the amount of the latter's floating debt, not exceeding twenty-five thousand dollars, one-fourth in money, and the remaining three-fourths in the bonds of the purchasing company having the State's indorsement—the bonds so agreed to be given "numbering from 320 upwards;" the bonds to be received at their market value, not less than ninety cents on the dollar. The bill avers that the section of the road from Attalla to Gadsden—five miles—was completed by the E. A.

& C. Co. by the 1st day of October, 1871, "and that, by the contract and agreement between the parties to said conveyance, it was understood that the East Alabama and Cincinnati Railroad Company should apply to the Governor for, and obtain the indorsement of its first mortgage bonds of one thousand dollars each, by the State of Alabama, in respect of the completion of said five miles of road, under the laws then in force; said bonds to be numbered from three hundred and twenty upwards,. as it was contemplated and known to the parties that. the bonds to be indorsed by the State in respect of the completion of the road in Lee and Chambers counties for twenty miles [the first twenty beginning at Opelika], would be numbered from 1 to 320 ; and it was stipulated by said contract and conveyance that, as part of the consideration thereof, twenty-five thousand dollars should be paid by the East Alabama and Cincinnati Railroad Company to the Tennessee and Coosa Railroad Company, of which one-fourth should be in money, and three-fourths in the first mortgage bonds of said corporation, indorsed by the State of Alabama, numbered from 320 upwards, as set forth in said conveyance. That on the completion of said five miles of railroad from Attalla to Gadsden, the said company did apply to the Governor of the State of Alabama for, and did shortly thereafter obtain its indorsement of eighty of its one thousand dollar first mortgage bonds, numbered from 321 to 400 inclusive, and out of said indorsed bonds, did deliver to said Tennessee and Coosa Railroad Company, in pursuance of said contract and conveyance, nineteen of said bonds, numbered from 321 to 339 inclusive, and did pay to it the balance of said twenty-five thousand dollars in money ; and said money and bonds were accepted in satisfaction of said twenty-five thousand dollars." This averment of the bill is denied in the answer.

The only testimony in support of the averment copied above is that of Barnes,. the trustee, who negotiated the purchase. "He says that it would be impossible for him to state all that passed between him and the president of the Tennessee and Coosa Railroad Company in relation to the proposition by the East Alabama and Cincinnati Railroad Company, to purchase from the Tennessee and Coosa Railroad Company ; that he, in company with Mr. J. S. Colt, met Mr. Lewis Wyeth some time in the 1st of July, 1871, at Guntersville in Marshall county, who then claimed to be the president of the Tennessee and Coosa Railroad Company, and many propositions and much talk was had between us, when they all, that is, the propositions, ended in coming to the agreement contained in the deed of the Tennessee and Coosa Railroad Company, of the 12th of July, 1871, as he now remembered the date. The said East

[Tennessee & Coosa R. R. Co. v. East Ala. R'y Co.]

Alabama and Cincinnati Railroad Company had nearly completed the first section of their railroad from the junction near Opelika, Lee county, to some point near four miles above LaFayette in Chambers county, of twenty miles, and it was known, that it was expected that the said company would obtain the indorsement of the State of Alabama, to sixteen thousand dollars a mile, on said twenty miles, and that they would number from 1 to 320, on the indorsement of the said bonds for said twenty miles, and that they were secured by the deed of trust to W. H. Barnes and Henry Clews on the first of July, 1870, and were to be issued in the sums of one thousand dollars each. These facts were fully told to the president of the Tennessee and Coosa Railroad Company at the time of said negotiation and sale by the said Tennessee and Coosa to the said East Alabama and Cincinnati Railroad Company. It was known by the said president of the Tennessee and Coosa Railroad Company, that the East Alabama and Cincinnati Railroad Company had made and executed on the 1st of July, 1870, the deed of trust to said W. H. Barnes and Henry Clews; and that the said East Alabama and Cincinnati Railroad Company had nearly completed the said twenty miles to above LaFayette, and that the said company expected to obtain the indorsement of the said bonds secured by said deed to Barnes and Clews, and that they would be of the amount of one thousand dollars each, and that they would be numbered from 1 to 320 inclusive. All this was talked over and understood at the time of said purchase from the said Tennessee and Coosa Railroad Company by the East Alabama and Cincinnati Railroad Company, and it was known that the bonds of the next five miles completed should be numbered from 320 upwards to 400; that there would be eighty bonds endorsed for the next five miles completed by said company; and would include 321 to 400 inclusive; and it was understood that the next five miles that would be built by the East Alabama and Cincinnati Railroad Company, would be from Gadsden to Attalla, on the line purchased by the said East Alabama and Cincinnati Railroad Company from the Tennessee and Coosa Railroad Company, and that the indorsement of the State would be procured on the bonds of said company, under the act of the legislature, and that the bonds so indorsed would number from 320 to 400, including 321. These things were all talked over, and fully understood and agreed upon; and it was agreed that the said Tennessee and Coosa Railroad Company should so receive the bonds as stipulated in said deed, indorsed by the State, knowing that they were to be indorsed for the five miles to be built from Gadsden to Attalla in Etowah county."

Against this there is the testimony of Wyeth, the president, and three of the directors of the Tennessee and Coosa Railroad Company. "Wyeth testified : " There was a good deal of conversation in reference to the agreement, before its completion, as well as after, and I can not state positively what was told me before or after the agreement was executed, in this regard. My impression is, that it was not until sometime after the agreement was executed, that I was informed the defendant company was expected to take bonds issued, or pretended to be issued, as liens upon its own (*i. e.* the defendant's) property, to secure a debt due to the defendant itself." The other witnesses—directors—testified to never having heard of such agreement or understanding ; and the records or minutes of the board contain no evidence that that body acted upon it.

There is a rule of law, that, in the interpretation of an instrument of writing, we are permitted to place ourselves in the situation of the contracting parties at the time of its execution, and to consider the occasion which gave rise to it, the relative position of the parties, and the obvious design they intended to accomplish.—*Pollard v. Maddox*, 28 Ala. 321; *Chambers v. Ringstaff*, 69 Ala. 140. Relying on this well recognized principle, it is contended for appellee that the averment of the bill, copied above, brings in the alleged understanding as part of the contract to be interpreted, and that the testimony establishes the truth of the averment. Thus interpreting the contract, it is claimed that the Tennessee and Coosa Railroad Company authorized the E. A. & C. R. R. Co. to fasten a lien in favor of the State on the road so purchased ; and the present appellee being subrogated to the lien and right of the State, it is claimed that the appellant is estopped from asserting an adverse right.

Several answers may be made to this. First. The argument seeks to extend the principle declared in *Pollard v. Maddox* too far. It proposes, not only to prove the attendant facts, the status of the two railroads, as a means of ascertaining the agreed intention of the parties contracting, but to supplement them with proof of an oral agreement, not in the writing, which changes its meaning. Changes it in this : The writing reserves the title in the grantor, as security, at least, until all the conditions are performed ; the alleged agreement seeks to estop the vendor company from asserting its title, upon the performance by the purchaser of one of many stipulated conditions precedent.

Second. It proposes, by oral proof, to vary and add a new term to a written contract, not expressed in the writing, but alleged to have been understood and assented to in the negotiation.

Third. Conceding every fact which appellee's testimony tends to prove, it shows only an agreement or understanding made between Wyeth, president of the T. & C. R. R. Co., and not with the company itself. The contract of sale was made by the corporation, speaking through its board of directors. That contract could not be varied by any agency less than the power which entered into it. No member, nor number of members of the board less than a quorum, had authority to add a new term or condition to the contract; and even then, to be binding, such act must be performed by the directors assembled as a board.—Ang. & Ames on Corp. (11th Ed.) §§ 231-2 ; *Lazarus v. Shearer,* 2 Ala. 718 ; 1 Brick. Dig. 403, § 28.

It is further contended for appellee that because Carlisle, who held the nineteen bonds paid by the East Alabama and Cincinnati Railroad Company on the purchase, proved them in the foreclosure suit, and obtained his *pro rata* of the proceeds of the sale made thereunder, this estops the appellant from assailing the title acquired under that sale. The gist of this argument is, that the fund distributed among the creditors was derived from the sale of the whole road—that purchased from the T. & C. R. R. Co., as well as the original property of the E. A. & C. R. R. Co.; and participating in the proceeds of the sale, was a participation in the proceeds of the Tennessee and Coosa Railroad Company's property. This, it is contended, estops the appellant from claiming the property itself, on the well recognized principle that you can not recover property, of the sale of which you have claimed and recovered the proceeds.—*Butler v. O'Brien,* 5 Ala. 316 ; *Elliott v. Br. Bank,* 20 Ala 345.

There are several answers to this. The Tennessee and Coosa Railroad Company was not made a party to the foreclosure suit. Consequently its rights were not affected by the decree. Only the rights which the E. A. & C. R. R. Co. had purchased, passed under the mortgage or trust deed. Those rights and that interest were all the purchasers acquired by their deed, and these they acquired *cum onere. Caveat emptor* is the rule in such cases.— *Wiswall v. Ross,* 4 Por. 321.

Another view. By the terms of purchase, the East Alabama and Cincinnati Railroad Company bound itself to pay the floating debt, not exceeding twenty-five thousand dollars. This was to be paid presently, or within a short time ; long before it bound itself to perform other conditions, which the contract made precedent to the vesting of title. The payment being made to liquidate the floating debt, it was manifestly contemplated it would be paid out to the creditors before it could be known whether the other conditions would be performed. These bonds, together with the money paid, did go into the

[Herring, Farrell & Sherman v. Skaggs.]

hands of Carlisle, the chief creditor, before the purchasing company put itself in default, and he it was who proved the claim—not the T. & C. R. R. Co. Now, whether Carlisle had the right to appropriate the whole fund to his use, is not the question. He made the proof and claimed the *pro rata* dividend. The T. & C. R. R. Co. is not shown to have had anything to do with it, or to have had knowledge of it. There is nothing of estoppel in this.

We have, then, the simple case of a sale and conveyance, by the very terms of which the title was not to pass until the purchaser performed several enumerated conditions, within specified dates, long passed. Some were performed, while the weightier ones remain wholly unperformed, and the purchasing company has ceased to exist. Giving effect to the contract as made, the legal title still remains in the Tennessee and Coosa Railroad Company, and the appellee has shown no equitable right to stay its assertion.—7 Wait's Act. & Def. 358; 1 Jones on Mort. § 227.

The decree of the chancellor is reversed, and a decree here rendered, dismissing complainant's bill, and dissolving the injunction. Let the appellee pay the costs of this suit, and of the appeal in the court below and in this court.

Reversed and rendered.

BRICKELL, C. J., not sitting.