# Pratt v. Nixon.

*Bill in Equity for Foreclosure of Second Mortgage, and Cancellation of First as Void.*

1. *Estoppel by recital in mortgage of prior incumbrance.*—When a second mortgage expressly refers to the first, declaring that it is second, the recital estops both the mortgagor and the second mortgagee from denying the validity of the first.

APPEAL from the Chancery Court of Marengo.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 11th of November, 1887, by Merrill E. Pratt, against William G. Nixon and wife, and a foreign corporation called the Dundee Mortgage and Trust Investment Company, Limited, of Scotland; and sought to

[Pratt v. Nixon.]

foreclose a mortgage on a large tract of land, which said Nixon and wife had executed to the complainant, and to have two former mortgages, which they had executed to said foreign corporation, declared null and void. The opinion describes each of these mortgages, and states the material facts on which their validity depends. On final hearing, on pleadings and proof, the chancellor rendered a decree of foreclosure, but gave preference and priority to the mortgages of the corporation. Pratt appeals from this decree, and assigns it as error.

TOMPKINS & TROY, and J. C. ANDERSON, for appellant, cited *Mullens v. Amer. Freehold Land Mortgage Co.*, 88 Ala. 280; *Craddock v. Amer. Freehold Land Mortgage Co.*, 88 Ala. 281; *Farrior v. N. E. Mortgage Security Co.*, 88 Ala. 275; *White v. Bass*, 3 Cush. 449; 15 Amer. & En. Corp. Cases, 441, 446; 1 Pom. Equity, § 402; 2 *Ib.* §§ 942, 964; 9 Amer. & Eng. Encyc. Law, 881.

TAYLOE & JOHNSTON, contra, cited *Jerome v. McCarter*, 4 Otto, U. S. 734; *Crane v. Morris*, 6 Peters, 514; *Carver v. Astor*, 4 Peters, 1; *Muncie Nat. Bank v. Brown*, Ind., 14 N. E. Rep. 358; *Clapp v. Halliday*, Ark., 2 S. W. Rep. 853; *Smith v. Graham*, 34 Mich. 304; *Johnson v. Thompson*, 129 Mass. 398; *Freeman v. Auld*, 44 N. Y. 50; 53 N. Y. 586; 11 Wall. 217; 79 Mo. 239; 70 Mo. 471; Herm. Estoppel, §§ 216, 229.

STONE, C. J.—In January, 1882, Francis Smith & Co. opened an office in this city, Montgomery. They were loan and mortgage brokers, and so announced themselves. J. R. and S. W. John, a law firm, having their office in Selma of this State, were agents or brokers, and tendered their services to money-lenders desiring to place money at interest, and to money-borrowers desiring to obtain loans. The difference in their professed lines of business consisted in the fact, that while Francis Smith & Co. claimed to represent only borrowers seeking to obtain money on mortgaged real estate as security, John & John proposed to represent lenders as well as borrowers, if their services were so desired. In the transaction brought to view in this case, it is testified that each firm represented Nixon, the borrower; and the record contains no testimony to the contrary.

Each of these firms had part in the preparation of Nixon's application for the loan which gave rise to this suit. The preparation consisted in properly ascertaining the sufficiency of the security offered—the value of the land, and the goodness

13

Pratt v. Nixon.

of the title—and in the preparation and execution of the notes and mortgage, evidencing the loan, and securing its repayment. For these Nixon contracted, and he paid for them. It is not shown that the lender, the Dundee Mortgage and Trust Investment Company, Limited, had any paid agent in the transaction. In fact, it is not shown it had any agent, except what is stated further on.

The loan was thirteen thousand five hundred dollars, the principal to be repaid in ten annual installments, all to become due if there was default as to one, provided the mortgagee elected so to treat them. The interest was made payable annually, and evidenced by separate notes. The mortgage conveyed a large tract of land to secure the payment of all the notes, those for the interest as well as those for the principal. The mortgage contains a power of sale on default. All these papers bear date March 14, 1882, and we have no evidence they were not executed on that day. The money—$13,500—was advanced in full without diminution, by the Dundee Mortgage and Trust Investment Company, Limited (of Scotland), and reached Nixon's agents March 18, 1882. It was paid in a sight draft on New York, and was immediately converted into cash. Of this money the two firms of brokers were first paid their commissions and charges, and the residue went to other purposes of the said Nixon.

In June, 1884, Nixon executed a second mortgage to the Dundee Mortgage and Trust Investment Company, Limited (of Scotland), to secure a further sum of twenty-seven hundred dollars. This mortgage conveyed land not embraced in the first, and also contained a power of sale on default.

In July, 1884, Nixon executed a mortgage to Merrill E. Pratt, to secure the payment of an indebtedness to him of seven thousand dollars. This mortgage conveys the same lands as those conveyed in the mortgages to the Dundee Mortgage and Trust Investment Company, Limited, of Scotland.

Nixon failed to meet the installments in full, alike of the principal and interest which the mortgages secured, and the Dundee Mortgage and Trust Investment Company, Limited, advertised the lands for sale under the power given them in their mortgages. Thereupon, Pratt, the mortgagee of the latest date, filed the original bill in this cause, enjoining the sale, which had been advertised, and praying a foreclosure of his mortgage as the oldest valid lien on the property. The ground on which Pratt based his asserted priority over the Dundee Company was, and is, that the said company, at the time of the loan, was a foreign corporation doing business in this State, and had not "one known place of business, and an agent

therein." Our Constitution of 1875, Art. XIV, § 4, ordains, that "No foreign corporation shall do any business in this State, without having at least one known place of business, and an authorized agent or agents therein; and such corporation may be sued in any county where it does business, by service of process upon any agent anywhere in this State."

At the time the several mortgages presented in this record were executed, no statute of this State had been enacted, to carry into effect the foregoing constitutional provision. Still, we held it to be, in large degree, self-executing, and we ruled upon it as such in several important cases.—*Amer. Un. Tel. Co. v. W. U. Tel. Co.*, 67 Ala. 26; *Beard v. Un. & Amer. Pub. Co.*, 71 Ala. 60; *Sherwood v. Alvis*, 83 Ala. 115; *Dudley v. Collier*, 87 Ala. 431; *Farrior v. New. Eng. Mortg. Sec. Co.*, 88 Ala. 275; *Mullens' Case, Ib.* 280; *Craddock's Case, Ib.* 281. The legislature, by act approved February 28, 1887—Sess. Acts, 102—have made provision for carrying this clause of the Constitution into effect; and some of our later rulings comment on that statute. It can exert no influence, however, on the case we have in hand, for the obvious reason, that all the mortgages here brought to view are older in date than the statute of 1887.

There was in this case a cross-bill by Nixon, and very full testimony was taken on all disputed questions, fully elucidating the transaction. There was some testimony, probably illegal, if objected to, that long before Nixon's application for a loan was presented, Francis Smith, of the firm of Francis Smith & Co., was appointed agent of the Dundee Mortgage and Investment Company, Limited, of Dundee, Scotland. Nixon's notes, given alike for principal and interest, secured by the mortgage, although dated March 14, 1882, are on their face made payable "to the order of the Dundee Mortgage and Trust Investment Company, Limited, at the office of said company in said city of Montgomery." The notes purport to have been executed at Montgomery, Alabama.

On March 16, 1882, before Nixon received the $13,500, the following resolution was adopted: "At a meeting of the directors of the Dundee Mortgage and Trust Investment Company, Limited, held in the company's registered office on the sixteenth day of March, 1882, it was, *inter alia*, resolved as follows, viz.: Having regard to minutes of 21st December last, in which Mr. Smith is appointed to act for the company in loaning its money in the Southern States, and to the fact that he has, in exercise of the powers then conferred upon him, resolved to do business in Alabama, and has opened an office in the city of Montgomery, the directors approved, and

hereby approve Mr. Smith's action, and declare and do hereby declare that he is duly appointed agent of the company for the State of Alabama, for the purpose of negotiating and making loans, collecting interest thereon, and generally to carry out such instructions as he may from time to time receive in connection therewith, and that in so far as the company requires an office in said city, the same is the office opened in said city of Montgomery by said Francis Smith."

A copy of this resolution, duly certified, was filed in the office of judge of probate of Montgomery county, Alabama, May 3, 1882, and was duly recorded.

Many acts of ratification and recognition of the validity of the mortgage by Nixon were proved; and he continued to recognize his liability up to a time subsequent to the submission of the cause to the chancellor for a final decree. Many and strong reasons are urged why the principle declared in *Farrior's Case*, and in *Dudley's Case*, should not apply to this, but we prefer to rest our ruling on a different principle.

The mortgage to Pratt, it will be remembered, was executed after each of the mortgages to the Dundee Company had been made; and we may add, if deemed necessary, long after the Dundee Company had a known place of business in Alabama, and an agent therein. Nixon knew where its place of business was, for he recited it in the notes he gave in March, 1882. In the Pratt mortgage is this recital: "It is understood that this mortgage is second to the mortgage heretofore given for a loan negotiated through Francis Smith & Co." It is not pretended that the loan here recited is other than the loan referred to above as made by the Dundee Mortgage and Trust Investment Company, Limited. That loan was negotiated through Francis Smith & Co.

In 1 Jones on Mortgage, § 744, it is said: "Even any one who has bought subject to a mortgage, without assuming the payment of it so as to make himself personally liable, can not contest the validity of the mortgage lien."—2 Jones on Mortgages, § 1491. In *Carver v. Jackson*, 4 Pet. 1–83, the opinion of the court was by Story, J. It is there said: "We are of opinion, not only that the recital of the lease in the deed of marriage settlement was evidence between these parties of the original existence of the lease, but that it was conclusive evidence between these parties of that original existence, and superseded the necessity of introducing any other evidence to establish it." In *Johnson v. Thompson*, 129 Mass. 390, it is said: "A grantee of land is estopped to deny the validity of a mortgage to which his deed recites that the conveyance to him is subject." In *Freeman v. Auld*, 44 N. Y. 50, the prin-

[Pratt v. Nixon.]

ciple is thus stated: "One who holds real estate under a deed which, by its terms, is subject to a prior mortgage, is estopped from questioning the consideration or validity of that mortgage." In *Jerome v. McCarter*, 94 U. S. 734, the court said: "The full indebtedness was acknowledged by making the junior mortgage expressly subject to it; and as there is no evidence that any portion of it has been paid, it is not admissible for the mortgagors, or their assignees in bankruptcy, to deny it now." In *Hassenritter v. Hirckhoffer*, 79 Mo. 239, the court employs this language: "When a person executing a deed recites particular facts, those facts become conclusive evidence against him, and he is not at liberty to deny the truth of the statement." And we may add, if Nixon estopped himself by the recital, Pratt was equally estopped, for he derived all his title from Nixon, and under the mortgage which contained that recital. The following authorities assert substantially the same doctrine: *Crane v. Morris & Astor*, 6 Pet. 548; *Bronson v. LaCrosse R. R. Co.*, 2 Wall. 283; *Smith v. Graham*, 34 Mich. 302; *Muncie Nat. Bank v. Brown*, (Ind.) 14 N. E. Rep. 358; *Central Nat. Bank v. Hazard*, 30 Fed. Rep. 484.

It would seem that this principle is as well fortified by reason as by authority. One who takes a conveyance, absolute or conditional, which recites that it is second or subordinate to some other lien or incumbrance, can in no proper sense claim that he is a purchaser of the entire thing. He purchases only the surplus, or residuum, after satisfying the older incumbrance.

The cases of *Bennett v. Bates*, 94 N. Y. 354, and *Purdy v. Goar*, 109 N. Y. 448, rest on their own exceptional facts, and, properly interpreted, are not opposed to the authorities cited above.

Without deciding whether or not the Dundee Company, when it accepted Nixon's first mortgage, had a known place of business and an agent therein, as required by our Constitution, it is not denied that this requirement had been complied with long before the second mortgage to it and the later mortgage to Pratt were executed.

The errors assigned in this case are by Pratt alone; and we have shown above that he is estopped from making the defense he relies on. Even if errors were assigned for Nixon, we are not prepared to say he would fare any better.

The decree of the chancellor is in all things affirmed.