# Vann *v.* Lunsford.

### *Action on Penal Bond, Assigning Breaches.*

1. *Sureties, as favorites of the law,* are allowed to stand on the strict letter of their contract, and are discharged by any alteration of it made without their consent, whether thereby injured or not; but, in the construction of a contract signed by principal and sureties, the same meaning will be given to the words as against each.

2. *Parol evidence explaining writing.*—Parol evidence can not be received to explain or remove a patent ambiguity in a written instrument, but, when a latent ambiguity is made to appear by evidence *aliunde,* it may be explained or removed by the same kind of evidence; yet such evidence must be submitted to the jury to ascertain the facts, while the court instructs them as to their effect; though the improper reception of such evidence by the court would be error without injury, when it appears that the writing was nevertheless rightly construed.

3. *House as personalty, on severance.*—The owner of a house and lot may, by a sale of the house alone, sever it from the realty, and convert it into a chattel; but, if there is an out standing mortgage on the property, the sale is a nullity as against the mortgagee, unless he consents to it, and the house can not be removed without his consent.

4. *Measure of damages on sale of personalty.*—On a sale of personal property, to be delivered to the purchaser at a specified time and place, the price being presently paid, the measure of damages for a failure to deliver is the value of the property at the specified time and place of delivery; but this principle does not apply to the sale of a dwelling-house, which the seller promises to remove to the purchaser's adjoining lot, but fails to do so.

5. *Construction of contract for sale and removal of house, payment of rent, etc.*—Under a written contract which, after reciting that the principal obligor had sold a frame dwelling-house to the obligee at a stipulated price in hand paid, and agreed to remove it to the adjacent lot of the obligee by a specified day, and to pay him a stipulated rent, the sureties binding themselves for his faithful performance of these agreements; the removal of the house being prevented by a third person, who held an unsatisfied mortgage on the property, which he foreclosed, becoming himself the purchaser; the value of the house, or the price paid for it by the obligee, is not an element of the damages he is entitled to recover as against the sureties, who did not bind themselves to remove or satisfy the mortgage.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by George Lunsford, against Samnel G. Painter, W. J. Vann, and John M. Thompson, to recover damages for the breach of a written contract in the form of a penal bond, which is set out in the opinion of the court; and

[Vann v. Lunsford.]

was commenced on the 4th January, 1888. The assignments of error embrace rulings of the court below on the pleadings and evidence, charges given, and refusal of charges asked.

J. M. McMASTER, and MARTIN & McEACHIN, for appellants. (1) All the terms and stipulations of the contract are clearly expressed in the writing, and the court erred in receiving extrinsic evidence to explain, qualify or vary its meaning.— *T. & C. Railroad Co. v. East Ala. Railway Co.*, 73 Ala. 444; *Anderson v. Bellenger & Ralls*, 87 Ala. 336; *Sewing Machine Co. v. Fargo*, 3 N. Y. Sup. 494; 1 Greenl. Ev., §§ 276–82; Brandt on Suretyship, §§ 78–80. (2.) If there is any right of recovery, the measure of damages is the cost of removing the building, and nothing more. The contract does not bind the parties to pay the value of the building, in the event of a failure to remove it as stipulated, nor to satisfy the incumbrance which prevented its removal.—Suth. Damages, vol. 1, 481, 489; *Watt v. Montgomery*, 2 Ala. 425; *Taliaferro v. Brown*, 11 Ala. 708; *Baldwin v. Munn*, 2 Wend. 399; *Conger v. Weaver*, 20 N. Y. 140; *Pumpelly v. Phelps*, 40 N. Y. 60; *Sweem v. Steele*, 5 Iowa, 352. (3.) But no recovery whatever can be had as against the sureties, Vann and Thompson. They were discharged by the alteration of the contract between their principal and Lunsford, to which they did not consent. They consented to the postponement of the removal from October 15th to November 20th, and can not complain of that; but the evidence shows that Lunsford continued to receive rent from Painter, at the stipulated rate, up to the 1st January, 1888.—*McDevitt v. Lambert*, 80 Ala. 536; *Lindley v. Hart*, 14 N. W. Rep. 682; Brandt on Suretyship, § 305; *Brooks v. Wright*, 13 Allen, Mass. 72; *Inge v. Br. Bank*, 8 Porter, 116; *Haden v. Brown*, 16 Ala. 643; *Cox v. Railroad Co.*, 37 Ala. 323; *Insurance Co. v. Randall*, 71 Ala. 222. (4.) The house being subject to the mortgage, Painter would have been guilty of a criminal offense, if he had removed it without the consent of the mortgagee (Code, § 3835); and if the sureties had covenanted that he should do so, the contract would have been void on grounds of public policy.—Bish. Contracts, 549, 579, 587, 594, 661.

E. K. CAMPBELL, and WARD & JOHN, *contra.*—(1.) In the construction of a contract, the court seeks to get at the intention of the parties, and for this purpose will receive evidence as to the circumstances surrounding the parties at the time, their relative positions, and objects to be accomplished by its execution.— *Watts v. Sheppard*, 2 Ala. 434; *Whitsett v. Womack*,

[Vann v. Lunsford.]

8 Ala. 481; *Pollard v. Maddox*, 28 Ala. 326. (2.) The parol evidence was addressed to the court, and was not allowed to go to the jury; and it was not matter of exception.—*Pollard v. Maddox*, 28 Ala. 326. At most, its admission was error without injury, if the court properly construed the contract. *Blackwell v. Hamilton*, 47 Ala 470; *Dowling v. Blackman*, 70 Ala. 303. (3.) The sale of the lot with a reservation of the house, and the sale of the house to another, operated a severance, and converted the house into a personal chattel.—*Shaw v. Carbrey*, 13 Allen, Mass. 462. (4.) The measure of damages for a failure to deliver personal property, the price being paid, is its value at the time and place of delivery. *Bell v. Reynolds*, 78 Ala. 512; *Bolling v. Tate*, 65 Ala. 418; *Culver v. Hill*, 68 Ala 68; *Evans v. Railway Co.*, 78 Ala. 347.

COLEMAN, J.—The suit was brought to recover damages for the breach of the following contract, which was executed and dated on the 23d April, 1887:

"Whereas, Samuel G. Painter has this day sold to George Lunsford that certain two-story frame residence, with the other improvements, situated on the north-east corner of 3d Avenue, north, and 23d Street, and known as the Lane residence, in the city of Birmingham, Ala., with the exception of the servants' house and stable on said lot, but including the privy, fence, shrubbery, &c., at and for the sum of three thousand dollars in hand paid by the said Lunsford to the said Painter, the receipt whereof is hereby acknowledged; and whereas, in consideration of the premises, and the said sum of money, the said Painter covenants and agrees with said Lunsford, that he will remove the said residence off of the said lot on which the same is now situated, and place the same in like good order and condition on the lot owned by the said Lunsford, on the west side of 23d Street, between the alley and the residence on said lot, the place to be determined by the said Lunsford, so that the said residence, when located, shall front on said 23d Street, on or before the 15th day of October, 1887. And said Painter further covenants and agrees, that he will pay the said Lunsford the sum of one hundred dollars per month for the rent, from and after the execution of this undertaking; and the said Painter further agrees and covenants that he will remove and place the said residence on said last named lot of the said Lunsford by the time aforesaid, in as good order and condition as the said Lunsford now receives the said residence, and the fact shall be left to the decision of F. L. Rousseau, or some other good and competent architect. Now, therefore, know all men by these presents, that we, Samuel G. Painter,

[Vann v. Lunsford.]

as principal, and W. J. Vann and J. M. Thompson, as sureties, are held and firmly bound to the said George Lunsford in the penal sum of six thousand dollars, for the payment of which well and truly to be made, we bind ourselves, . . . jointly and severally by these presents. The condition of the above obligation is such, that whereas the above bounden Samuel G. Painter has entered into agreements and covenants with the said George Lunsford, to remove, for a valuable consideration, a certain residence herein mentioned by the time herein stated, and in a manner herein referred to, and has agreed to pay the said Lunsford a certain rental for said residence herein set forth; now, if the said Painter shall faithfully perform and keep all and each of the said covenants, agreements and stipulations herein contained, then the above obligation to be void, otherwise to remain in full force and effect. In case of suit, to recover the amount of this bond, we, the said principal and sureties, hereby agree to pay all expenses and cost of collecting, including a reasonable attorney's fee." Signed by the parties.

The sureties, Vann and Thompson, set up a defense applicable to them as sureties, distinct from that contended for by Painter, their principal. It is said that sureties are favorites of the law; but it must be conceded, that any rule which requires a different construction of a written contract made by a surety, from that applied in other cases, can not be sound, or founded in principles of justice. An obligee has the right to prescribe the terms upon which he parts with a consideration, and if he requires surety to be given according to expressed terms and stipulations, any rule of construction which would release the surety, because he is a favorite of the law, must work a manifest injustice or fraud on the obligee. The surety is under no obligation to become bound, but, having done so, his contract must be construed like the contract of any other obligor. "To say that a certain set of words in a contract mean one thing when a principal is defendant, and the same words in the same contract mean another thing simply because the defendant is a surety, is absurd."—Brandt on Suretyship, § 80. A surety is bound by the terms of his contract, and this liability can not be enlarged. Any variation of the obligation, without his consent, is fatal, whether he is injured thereby or not.—*Anderson v. Bellenger*, 87 Ala. 336. In this sense he is a favorite of the law, but not in the sense that his contracts are to be construed by different rules from those applied to the contracts of others.

From the bill of exceptions it appears that the plaintiff offered evidence which was confined to the court, and excluded

[Vann v. Lunsford.]

from the jury, to the effect that defendant Painter sold plain-
tiff, Lunsford, the Lane residence on the corner of 23d Street
and 3d Avenue, at the agreed price of $3,000; that plaintiff,
Lunsford, paid defendant $100 on the purchase, and after this
payment, being informed that Lane held a mortgage on the lot
and residence, and that he refused to let the house be removed,
unless he was paid $5,000 on his mortgage debt, refused to
make further payment. Painter then proposed to Lunsford,
that if he would pay the balance, $2,900, that he, Painter,
would give bond in double the amount, with approved surety,
that he would comply with his part of the contract, and would
pay him, Lunsford, $100 per month rent, the amount for which
the house was then renting. The defendant objected to the
introduction of this evidence, for causes which appear in the
bill of exceptions, and which will be hereafter considered.
Their objections were overruled, and defendants duly ex-
cepted.

This evidence, it is claimed, was properly introduced to
assist the court in its construction of the written agreement,
the foundation of the present suit, under the familiar rule, that
in the construction of contracts, the intention of the parties
should be carried into effect, and, if necessary, in order to
ascertain this intent, "we are permitted to place ourselves in
the situation of the contracting parties at the time of its exe-
cution, and to consider the occasion which gave rise to it, the
relative positions of the parties, and the obvious design they
intended to accomplish."—*Tenn. & Coosa R. R. Co. v. East
Ala. R. R. Co.*, 73 Ala. 444. Or, as was expressed in *Watts v.
Sheppard*, 2 Ala. 434: "The court, if necessary, looks to the
subject-matter of the contract, the situation of the parties, the
motives that led to it, and the object intended to be attained
by it."

In *Chambers v. Ringstaff*, 69 Ala. 143, the court held that
the distinction between patent and latent ambiguity had long
existed, and the general rule applicable to each class of cases
should not be disturbed; that in cases of patent ambiguity,
parol proof of what the parties intended by the contract will
not be received. Latent ambiguity existed when, on the face
of the paper, no doubt or uncertainty existed, but, by proof
*aliunde*, the language is shown to be alike applicable to two
or more persons, &c.; when this is the case, the uncertainty or
ambiguity may be cleared by the same character of proof as
that by which it is made to appear, to-wit, proof *aliunde*.

In *Pollard v. Maddox*, 28 Ala. 324, the preamble of the
deed stated, "whereas a railroad was about to be established,
now, for and in consideration of one dollar in hand, did "bar-

[Vann v. Lunsford.]

gain, sell and convey so much of any part of his land as shall be necessary in the construction of said road," &c. It was contended that the deed was void for uncertainty, and that the company took no interest in the land. In construing this contract, it was declared that the court should place itself in the situation of the contracting parties, the object to be attained by the grant, the inducement which led to it, the whole scope of the instrument; and when this was done, there was nothing uncertain which could affect the validity of the deed. To the same effect is the case of *Chambers v. Ringstaff*, 69 Ala. 145, *supra; Guilmartin v. Wood*, 76 Ala. 204; *Gunn v. Clendennin*, 68 Ala. 294.

It must be observed, that in all these cases and illustrations, where parol testimony was admitted to show the attending circumstances and situation of the parties, and the object to be accomplished, such testimony was used simply as means by which the intention of the parties could be ascertained. In no instance was the parol evidence used to supplement, vary, or add a new term, or impose an additional liability to the written agreement. We think the court misapprehended the true principle of law involved, in holding that the court should ascertain by parol evidence, to the exclusion of the jury, the attending facts and situation of the parties, to enable the court to construe the contract. The existence or non-existence of facts, in jury trials, in all cases, must be found by the jury. The court construes the contract, and if there be latent ambiguities, as shown by evidence *aliunde*, or the subject-matter of the contract uncertain, in proper cases the intention of the parties to the contract may be ascertained and declared from such proof; but it is for the jury to find from the evidence *aliunde* whether the facts alleged do really exist.—*Humes v. Bernstein*, 72 Ala. 546. Take the case quoted in 69 Ala. *supra*, for illustration. The lands were described by sections, townships and range, leaving off the State and county. From reading the deed, the court could not determine what lands were intended to be mortgaged. It would not have been proper for the court, exclusive of the jury, to have ascertained the fact that the grantor lived on certain lands of the description given in the mortgage, situated in Montgomery county, Alabama, and from such evidence have construed the contract, and declared that the mortgage was not void, but conveyed the lands upon which the grantor lived. It was left to the jury to find from the evidence whether the grantor lived on lands answering the description of those in the mortgage, in Montgomery county, at the time the mortgage was executed, and if they so

found, then the court declared that the contract was not void, but those were the lands intended to be conveyed.

"If the grant be my manor of S., to J. F. and his heirs, here appeareth no ambiguity at all. But, if the truth be, that I have the manors both of South S. and North S., this ambiguity is matter of fact; and, therefore, it shall be holpen by averment, whether of them it was that the party intended should pass."—1 Gr. Ev. § 297. In such case, the court does not receive the testimony that the party had manors S. and N., to enable it to construe the grant. The evidence is introduced before the jury, and the court construes and applies the grant as the jury may find that he had manors N. and S., and from the facts thus proven, the intention of the grantor is ascertained, as to "whether of the manors it was that the party intended should pass."

In the note to 2 Bigelow's Jarman on Wills, p: 424, and quoted approvingly by this court, we find the following statement of the rule: "Observe that, in all the above cases [where parol evidence had been used to explain an ambiguity], the parol evidence is not adduced to show that the testator intended the devise to have the operation given to it, but merely to supply facts from which the court infers such to be the intention."

The error complained of, the introduction of parol evidence to the court alone, would be error without injury, inasmuch as the jury did not hear it, if the construction placed upon the contract by the court was the true and proper construction. If such evidence induced the court to enlarge the liability of the obligors, to vary or alter the terms of the written contract, to supplement it, such misconstruction would be error; and this would be true whether it arose from the introduction of parol evidence, or a misapprehension of the meaning and intent of the parties as expressed in the writings.

The court charged the jury, " that if they believed the evidence, the plaintiff is entitled to recover the value of the said Lane house, on the 20th day of Nov., 1887, with interest from Nov. 20th, 1887, and attorney's fees, according to the agreement, after crediting this amount with the amount of rents received by Lunsford after Oct. 15th, 1887, unless they believe there was an extension of time for the removal of the house given by Lunsford to Painter without the consent of Thompson and Vann." The defendants asked the court to give the jury the following written charges: "If they believe the evidence, to find for the defendants." "If the jury believe from the evidence that there was no extension of time for the removal of the house after Nov. 20th, 1887; and if they fur-

[Vann v. Lunsford.]

ther believe that said bond has been breached by the failure of the defendants to remove said house as provided for in said bond, and the subsequent agreement for extension of time therefor, then the measure of recovery in this suit is what it would have cost to remove said house at the time specified, and place it in like good condition on said plaintiff's lot named therein." Exceptions were reserved to the giving of the charge, and the refusal to charge as requested.

The evidence before the jury tended to show that, in January, 1887, Lane sold Painter the lot upon which the house was then situated, and which was a part of the lot, for $25,000, receiving in cash $8,000, leaving a balance of $17,000 unpaid. The balance was payable in two installments, the first falling due in January, 1888, and both secured by a mortgage on the house and lot. Lane, the mortgagee, refused to permit the house to be removed from the lot. The first note not being paid at maturity, the mortgage was foreclosed, and Lane became the purchaser. Lane held posesssion of the house after his sale to Painter as a tenant, until he became the purchaser; since then he had held possession in his own right as purchaser. The value of the house in Oct., 1887, was from $3,000 to $5,000. The cost of removal of the house across the street, to the lot designated in the obligation, was from $400 to $800. The evidence tended to show that the sureties, Vann and Thompson, knew of the purchase by Painter from Lane; that they were interested in the sale of the lot by Painter to a hotel company ; that in the sale to the hotel company Painter reserved the dwelling-house; and that Lane's mortgage was duly recorded, in January, 1887. Thompson testified, that he had no knowledge of the existence of the Lane mortgage. It was admitted that the time for removing the house, by consent, was extended to November 20th, 1887, and that the house had never been moved.

The bond in this case is penal, and the damages recoverable depend upon the injury sustained by breach of its covenants. The owner in fee of realty, by sale of a dwelling-house thereon, may sever it from the realty, and convert the house into a mere chattel.—*Mabe v. Foster*, 4 Ala. 404; *Harris v. Powers*, 57 Ala. 142. As against the mortgagee, Lane, without his consent, such a sale had no binding effect. As to him, it was *res inter alios acta.*

The general rule for the measure of damages for failing to deliver personal property, at a specified time and place, is the value of the property at the time and place agreed upon for its delivery.—*Bell v. Reynolds*, 78 Ala. 512; *Ib.* 347; *Bolling v. Tate*, 65 Ala. 418; *Culver v. Hill*, 68 Ala. 66;

5 Amer. & Eng. Encyc. of Law, p. 30. But no definite rule can be laid down, suitable for all cases, for the measure of damages, each varying according to the circumstances. If A. agreed for a stipulated price to deliver B's horse for him, by a fixed time, at a certain place, and B. had no horse, or, if having one, he refused or was not able to let A. have the horse, so that A. could carry out the contract, such a rule for the measure of damages would not apply. Or, if Lunsford did not own the dwelling-house, had no actual interest of pecuniary value in the house, it is difficult to understand how the mere failure to remove the house would entitle him to recover as damages the value of the house. On the other hand, if Lunsford owned the house absolutely, and its money value to him was three thousand dollars, where situated, and its value would not have increased by its removal, ordinarily the damages recoverable for the failure to remove it would be merely nominal.

The proof very clearly shows, that the proximate responsible cause of loss and damage to Lunsford was not the failure to remove the house, but resulted from the outstanding unpaid mortgage of Lane, which was a claim and title superior to that of his, or his vendor, Painter. By reason of the mortgage, the sale of the house to Lunsford, though valid as between him and Painter, had not in fact had the legal effect, as against Lane to sever the house from the realty, and convert it into a chattel; and the superior claim of Lane made it impossible for the obligors to carry out their contract for its removal. If the obligors were not responsible for the debt secured by the Lane mortgage, which prevented them from removing the house, no just measure of damages could make them responsible for the value of the house.—*Conger v. Wenn*, 20 N. Y. 140; *Baldwin v. Munn*, 2 Wend. 399; *Sweem v. Steele*, 10 Iowa, 374.

The charge of the court can not be sustained, unless by the express terms of the written obligation itself, the obligors relieved Lunsford of his bounden duty to deliver the house to them as a chattel for removal, or unless, by fair and legitimate construction of the agreement, without reference to evidence *aliunde*, it appears that defendants obligated themselves to remove the incumbrance of the Lane mortgage.

There is no indefinite stipulation in the contract, or one which can be regarded as containing a latent or patent ambiguity. The premise of the contract is, that Painter sold to Lunsford the house for three thousand dollars, and the proof shows that Lunsford paid him the purchase-money. The covenants then are, that Painter will pay Lunsford one hundred dollars per month for rent, and remove the house, without

[Henry v. Louisville & Nashville Railroad Co.]

injury, to Lunsford's lot, by the 15th of October. The sureties, Vann and Thompson, covenant and agree that the rent will be paid, and the house be removed according to the covenants; but they no where assume to pay any incumbrance that may be on the house, or remove any legal obstacles that may prevent its removal, or its delivery to them by Lunsford; neither do they guarantee the title of Painter. It can not be ascertained from a reading of the contract that there was a mortgage on the house, or any difficulty in the way of its removal. This can only be shown by proof *aliunde*. To prove by such evidence that Lane held a mortgage on the house, which was a superior title to that of Painter, and then hold the obligors responsible for the loss sustained by reason of Lane's superior title, would be placing a construction on the contract not authorized by its terms. Such a construction requires the adding of a new covenant, not contained in the written agreement.

The breaches assigned in the declaration of the plaintiff did not authorize the introduction of any evidence on the part of the plaintiff of the Lane mortgage and its foreclosure. Such evidence may have been admissible for defendants as a defense to plaintiff's suit. Under the evidence as it appears in the record, the court erred in giving the charge as requested by plaintiff, and the court ought to have given the general charge in favor of the defendants.

Reversed and remanded.

91　585
136　600

*Action on Penal Bond, Assigning Breaches.*

