# Ware v. Hamilton Brown Shoe Co.

*Bill in Equity by Creditor of Husband, to subject Improvements erected by him on Wife's Lands.*

1. *Foreign corporations, under constitutional provisions.*—In the matter of contracts, corporations are not within the provision of the Federal Constitution which declares, "The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States," but are dependent on the laws of the State for the privilege of doing business within its limits; yet the contracts of a foreign corporation with a citizen are subject to the constitutional power of Congress to regulate commerce among the several States, and contracts within the scope of that power are not subject to restrictions imposed by State laws.

2. *Same.*—A contract for the purchase of goods, made between a citizen of Alabama and a Missouri corporation, whether made in Alabama or Missouri, is within the congressional power to regulate

10

inter-state commerce; and the corporation may maintain a suit on the contract in Alabama, without alleging or showing a compliance with our constitutional and statutory provisions as to having a resident agent and a known place of business.

3. *Improvements erected by husband on wife's lands; remedies of creditor against.*—Improvements erected by the husband, with his own moneys, on his wife's land, are regarded as a gift to her, and are subject to the claims of his creditors; and though they enure to the benefit of a prior mortgagee of the the land, as against the husband and wife, his right is subordinate to the claim of the husband's creditors. But, as to what the remedy of the creditors is, *quære.*

4. *Same; prior mortgagee as party to bill.*—If the wife's land is subject to a prior mortgage for unpaid purchase-money, the husband's creditor, seeking to enforce his claim against the improvements erected thereon with the husband's money, can neither redeem, nor force a foreclosure; but the mortgagee is a proper party to the bill, and will be concluded by the decree.

APPEAL from Chancery Court of Montgomery County.

Heard before the Hon. JOHN A. FOSTER.

The appellee corporation originally filed this bill in the Chancery Court of Elmore County against the appellants; and the case was subsequently removed, by consent, to Montgomery County. The bill was filed on October 15, 1889. The bill averred:

(1.) That defendants Mary H. Ware and Robert Y. Ware, Jr., were husband and wife; and that Mrs. Ware became possessed of a house and lot situated at Tallassee, Alabama, by purchase from one Mrs. Bessie J. Wadsworth, and executed to Mrs. Wadsworth a mortgage to secure a part of the purchase money which was unpaid. That at the time of the purchase, there were a large dwelling house and out houses on said lot of land; that during the month of June, 1889, Robert Y. Ware, Jr., began the erection of a storehouse upon the land and continued its erection until the 5th of October; that said Robert Y. Ware, Jr., bought the material out of which the storehouse was constructed, and hired the labor to do the work, and paid for all such material and labor with money which belonged to himself, and with goods and merchandise purchased from complainants and other creditors. That if any such material and labor had not been paid for the same were obtained by Ware upon his own credit, and were intended as a gift to Mary H. Ware; and that Mary H. Ware knew all these facts.

(2.) That up to the 1st of July, 1889, Ware had not expended upon the building more than five hundred dollars, and prior to the 9th of June, only about one hundred dollars, and all the balance of the expenditures were made thereafter; and that Ware was insolvent at the time the suit was commenced.

(3.) That Ware commenced the purchase of a stock of goods

in June, 1889, for the avowed purpose of carrying on a mercantile business in his own name, in said storehouse—purchasing to the amount of about $12,000 from divers persons—all on credit; that he began to receive said goods about the first of September; that the same were to be paid for at different times, but complainant's first bill became due on October 1st.

(4.) That about the first of October, Ware quit business and sold $3800 worth of his goods to a few of his creditors, some of them being persons whom he owed for material furnished for and labor done about the storehouse; that he sold about two thousand dollars worth to one Harrington in payment of an amount which he claimed to owe Harrington, which debt was evidenced by his promissory note; that he selected another thousand dollars worth as exempt to himself; but gave no account of the balance of his purchases. That he had never paid for any of the goods purchased except those sold to creditors hereinabove referred to. That he leased the storehouse to Gibson and Patterson for a term of one or more years, at the rate of one thousand dollars per annum, and they had taken possession of the property, at the time the present bill was filed.

(5.) That complainant, prior to the 9th day of June, sold to Ware a bill of shoes amounting to $879.90, due and payable on October 1st; that on the 8th day of July, they sold him another bill for $241.90, due and payable at the same time. That the shoes were shipped to Ware by complainant from the city of St. Louis, and were received by him.

The bill recites that complainant is a corporation, chartered under and by virtue of the laws of Missouri, and has its principal place of business in the city of St. Louis. The original bill made all the parties mentioned hereinabove parties, except Mrs. Wadsworth. It was subsequently amended by making Mrs. Wadsworth a party defendant.

The prayer of the original and amended bill is that the court should order a reference to the register to ascertain the amount of money and material furnished by Robert Y. Ware, Jr., to build the said storehouse, and whether or not the amount was a gift to Mary H. Ware; that if it be ascertained that Mrs. Wadsworth had a lien upon the property for the purchase money, and the rents and profits were insufficient to satisfy the same, that the premises be sold to satisfy first, the amount due to Mrs. Wadsworth, and then to pay to complainant an amount equal to the amount which Ware had expended for material and in money in the construction of the store-house upon his wife's land.

Each of the defendants made a motion to dismiss this bill

[Ware v. Hamilton Brown Shoe Co.]

for want of equity, and each of them filed demurrers to it. The demurrers were upon the following grounds: 1st That it was not shown that complainant, a foreign corporation, had an agent and a known place of business in this state. 2d. That it was shown by the bill that the estate of Mrs. Ware in the lands was a separate estate under the statutes of Alabama, and the facts did not show a case authorizing the same to be charged as prayed for in the bill. 3d. That it was shown by the allegation of the bill that Mrs. Wadsworth had a superior lien upon the property, and it was not shown that any tender had been made to her of the amount due to her, or that she had refused to accept the same. 4th: That the bill did not offer to pay to Mrs. Wadsworth the amount it might be ascertained was due her, and which was a first lien upon the property.

The Chancellor overruled each of the grounds of demurrer, and also overruled the motions to dismiss the bill for want of equity; and this appeal is brought by the defendants to review his rulings on these points.

TOMPKINS & TROY, and ARRINGTON & GRAHAM, for appellant.—1. The bill should have alleged that complainant had a known place of business in this State at the time of the sale.—*Dudley v. Collier*, 87 Ala. 431; *Farrior v. New England Sec. Co.*, 88 Ala. 275. 2. The bill fails to show that Ware was embarrassed at the time he furnished the materials and expended his money in improving his wife's property, nor does it show that such material and money were subject to complainant's debt.—*Nance v. Nance*, 84 Ala. 375. 3. The bill is without equity as to Mrs. Wadsworth. *Kelley v. Longshore*, 78 Ala. 203.

SAYRE, STRINGFELLOW & LEGRAND, *contra*.

COLEMAN, J.—A foreign corporation can not do business in a State, without the consent of the State, express or implied, and this consent may be granted with such conditions as the State may see proper to impose, provided only that the conditions are not in conflict with the Constitution, and laws of the United States, or inconsistent with the jurisdictional authority of the State, or in conflict with the rule, which forbids condemnation without opportunity for defense.—*Commonwealth v. N. Y. L. E. & West. R. R. Co.*, 129 Pa. 463; *Paul v. Virginia*, 8 Wal. 168; *Runfan v. Coster*, 14 Pet. 122; *St. Clair v. Cox*, 106 U. S. 350; *Doyle v. Continental Co.*, 94 U. S. 535; 15 Amer. St. Rep. 727. A State may exclude foreign corporations entirely, or restrict their business to par-

ticular localities, or exact such security for the performance of its contracts with its citizens as will best promote the public interest. In the matter of contracts, corporations are not entitled to the benefit of that provision of the Constitution of the United States which declares, that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." *Bank of Augusta v. Earle,* 13 Pet. 584-5; *Paul v. Virginia,* 8 Wal. 181.

The Constitution of the United States declares that Congress shall have power "to regulate commerce with foreign nations, and among the several States;" and this power includes commerce carried on by corporations as well as commerce carried on by individuals. In the case from 8 Wal. 183, *supra,* in determining whether the issuing of a policy of insurance was a transaction of commerce, the court declared such contracts are not articles of commerce in any proper meaning of the word, among others, for the reason that they are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one State to another, and then put up for sale.

In the case of *Robbins v. Shelby County Taxing District,* 120 U. S. 489, it was held, that "the business of selling goods which were in Ohio at the time of sale, and were, at a future time, to be delivered to the purchaser in the State of Tennessee, constituted inter-State commerce, and the license tax imposed by the statute [of Tennessee upon the business of drummers] was a tax upon inter-State commerce and invalid." 59 Amer. Rep. 267. The principle of law involved in the foregoing decision necessarily applies to the case now under consideration.

In the case of The *Cooper Manfg. Co. v. Ferguson,* 113 U. S. 727, Matthews, J., Blatchford concurring, held "the making of a contract in Colorado to manufacture certain machinery in Ohio, to be there delivered for transportation to the purchasers in Colorado, was commerce, and within the exclusive jurisdiction of Congress.

The bill avers that Ware was merchandising in Alabama, that complainant's debt is due for shoes sold and shipped to him from its factory in St. Louis, Mo. For such a liability, it it can make no difference whether the contract for the purchase of the shoes was made in Alabama, and the shoes were to be shipped from St. Louis, or whether the terms of the purchase were agreed upon in St. Louis. Art. XIV, Sec. 4 of the Constitution of Alabama, and the act of the legislature of 1886–7, p. 102--104, were not intended to interfere with matters of commerce between the States, and do not apply in cases like the present.

[Ware v. Hamilton Brown Shoe Co.]

The facts in the case of *Kelly v. Longshore*, 78 Ala. 204, were, that after Longshore had mortgaged his lands to Lehman, Durr & Co., Kelly recovered a judgment against Longshore. Kelly then filed a bill in chancery to require Lehman, Durr & Co. to foreclose their mortgage so that he might reach the excess of proceeds of sale, after satisfying the mortgage. The court held, that after the execution of the mortgage, there was nothing left in Longshore but the equity of redemption, and that a creditor of Longshore, or the purchaser of the equity of redemption, conceding the validity of the mortgage, could have no greater right than Longshore, which was simply to redeem from Lehman, Durr & Co. In the case before the court, the plaintiffs are not creditors of the mortgagor, and have no right or claim to the equity of redemption, or right to redeem from the mortgagee, and consequently there was no duty resting upon them to offer to redeem. The older authorities (*Davis v. Cook*, 65 Ala. 617, and cases cited), which held that a junior mortgagee had the right to file a bill to foreclose his mortgage, and to compel the foreclosure of a prior mortgage, have been in effect, if not in words, overruled by the more recent cases of *Kelly v. Longshore, supra; and Pratt v. Nixon*, 91 Ala. 192; 8 So. Rep. 151.

In the case of *Hoot v. Sorrel*, 11 Ala. 386, Jacob Hoot furnished lumber to improve a lot, the separate estate of his wife. Recognizing the general rule of law so often declared by this court that a gratuitous conveyance of property by a debtor is absolutely void as to existing creditors, and if made with the intention to defraud, will be avoided as to subsequent creditors, it was declared that the lumber was a gift to the wife, within the rule, and the court held that the proper way to reach the gift and subject it to creditors was to rent out or lease the property until the receipt equalled the value of the lumber furnished by the husband.

In the case of *Nance v. Nance*, 84 Ala. 378, this court declared, that materials furnished in making erections or improvements on the wife's separate real estate by the husband with his own money, if he is embarrassed, will be regarded as a gift in fraud of his creditors, who may make her estate liable therefor, if the proof shows that the materials furnished by the husband were in his hands subject to their claims. In the same line of authority may be cited *Aber v. Brandt*, 36 N. J. Eq. 116; *Frasey v. Wheeler*, 4 Oregon, 190.

In the case of *Bailey v. Gardner*, 13 Amer. St. Rep. 847; s. c. 31 West Va., 94, though not directly involved, the question was very generally discussed, and many authorities commented on, and in conclusion, it was declared "as well settled,"

that where no debt has been created between parties to a fraud-ulent transaction, and the personal property of the debtor has been merged or become a part of the real estate of another, the appropriate remedy for the creditor is to charge such real estate to the extent of the debtor's property thus made part of the realty.

If the contest in regard to the improvements was between Robert Y. Ware, the defendant, and Bessie Wadsworth, the mortgagee, it is very clear, that the improvements would go with and as a part of the realty in satisfaction of the mortgage debt, but Robert Y. Ware, an embarrassed debtor, has no more right to donate his property in fraud of his creditors to Bessie Wadsworth, or for her benefit, than to donate the same prop-erty to his wife. The bill recognizes the prior right of the mortgagee, and she is entitled to have her mortgage debt sat-isfied to the exhaustion of all the property conveyed, includ-ing the improvements as against the mortgagor, and her hus-band. But she can not appropriate the improvements put upon the premises by Robert Y. Ware in fraud of his creditors, until their claims have been satisfied.

Complainants are not creditors of the mortgagor, and con-sequently have no claim to her equity of redemption. They have no claim on the land, and can neither redeem under the mortgage, nor force its foreclosure. The mortgagee holds the legal title to real property of which Robert Y. Ware's prop-erty has become a part, and which part is liable to his credi-tors. She is, therefore, a proper party to these proceedings, and will be concluded by them. She can protect herself by a cross-bill or other proceedings as she may be advised. Parties by contract may sever a dwelling from the realty, and convert it into a chattel.—*Foster v. Mabe.* 4 Ala. 402 ; *Vann v. Luns-ford,* 91 Ala. 576 ; 8 So. Rep· 719. And if it become neces-sary to meet the demands of justice, a court of equity will do, what the parties themselves could do. Whether this course, or the rule declared in 11 Ala., *supra,* or some other should be adopted, will depend upon the pleadings and proof in the fur-ther progress of the cause.

There is no error in the ruling of the court on the demurrers.
Affirmed.