# Seasongood, Menderson & Co. v. Ware

## and

# Hamilton, Brown Shoe Co. v. Ware.

*Bill in Equity by Creditors of Husband to subject Improvements, erected by him on Wife's Lands, to Payment of their Debts.*

1. *Improvements by husband on wife's lands; burden of proof.*—Where improvements are erected by the husband, with his own moneys, on his wife's lands, the presumption of law is that such improvements are intended as a gift to the wife; and in an action by existing creditors of the husband, seeking to subject such improvements to the payment of their claims, the burden is upon the wife to overcome this presumption by competent evidence.

2. *Same; rights of creditors.*—On a bill filed by existing creditors of an insolvent debtor, seeking to subject to the payment of their claims a building erected by him, out of his own moneys, on his wife's lands, it is shown that at the time of the erection of the building the hus-

band was indebted to his wife; but the husband testified that, while there was no special understanding that the cost of the building should be credited on a debt due the wife by him, and no regular account was kept with a view of ascertaining what sum he expended in the erection of said building, he erected the building as part payment of his debt to his wife. The wife testified that there was no written agreement, but that the building was erected at her request, and with the understanding that it should be in part payment of what the husband owed her. *Held:* That the evidence was insufficient to show that the building was erected by the husband under an agreement that the moneys expended by him therefor were to be a credit on his indebtedness to his wife.

3. *Same; what relief granted.*—Where, on a bill filed by creditors to subject to the payment of their claims a building erected by their debtor, out of his own money, upon his wife's lands, the complainants are shown to be entitled to relief, but it is shown that in the erection of such building, a portion of the wife's money was used, and that the building was then leased as a storehouse, the complainants are entitled to have the rents of the storehouse applied to the payment, *pro tanto*, of their claims, less the interest therein of the wife, and upon the termination of the pending lease, the court may, by proper orders, take possession of said storehouse and rent out the same until the rents therefrom, or the portions thereto to which complainants are entitled, would be sufficient to pay their claims, or it may order the sale of said building, with the right and privilege in the purchaser to remove the same from the lands of the wife, and have the proceeds from said sale, less the interest of the wife, applied to the payment of complainants' claims.

APPEALS from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

These two cases involved the same question, were tried in the court below upon the same evidence, and were submitted together in this court. Each of the bills was filed by creditors of Robert Y. Ware, Jr., and sought to subject to the payment of their debts, the improvements which had been made by the debtor, Ware, on property owned by his wife, to the extent of the money which he had expended thereon.

The bills aver that Robert Y. Ware, Jr., after contracting debts with the respective complainants, expended large sums of money in building a storehouse on certain lands belonging to his wife, Mary H. Ware; that the money so expended was a gift to the said Mary H. Ware, and was, therefore, subject to the payment of the debts of the complainants. Mrs. Ware, the wife of Robert Y.

Ware, Jr., was made a party defendant to each of the bills, and in her answers thereto admitted that a portion of the money used in the construction of said storehouse was paid by Robert Y. Ware, Jr., but she alleged that said Robert Y. Ware was indebted to her at the time in the sum of $4,500, and that it was understood and agreed between them that the money used in paying for the erection of the storehouse should be credited upon that indebtedness. The amount so expended by Robert Y. Ware, Jr., in the erection of said storehouse was alleged to be $2,658.64. The other facts relating to the questions decided on this appeal are sufficiently stated in the opinion.

These causes were submitted to the chancellor for decree at the Spring term, 1892, on the pleadings and proof, and he thereupon ordered a reference to the register, to ascertain and report, first, the value of the improvements made and paid for out of the money of Robert Y. Ware, Jr., on the lands of his wife; second, how much he owed his wife at that time, if anything; and, third, whether she accepted the improvements as a payment in whole or in part payment of his indebtedness to her. After holding the reference ordered, the register reported, *first*, that Robert Y. Ware, Jr., had expended in the improvements, after the creation of the debts to the complainants, the sum of $2,009.39; *second*, that Robert Y. Ware, Jr., was indebted to his wife at the time he commenced these improvements in the sum of $4,474.88; and, *third*, that the expenditures made by Robert Y. Ware, Jr., in making the improvements upon his wife's property were made as a gift and not in payment of the debt due to her, or any part thereof. Mary H. Ware, the wife, excepted to that portion of the report of the register which reported that the amounts expended by Robert Y. Ware, Jr., out of his own funds, in making the improvements on the lands of said Mary H. Ware, were a gift to her, and not on account of his indebtedness to her.

On October 18, 1892, the chancellor rendered a final decree in the causes, confirming the report in all things, except as to third item of said report, and sustained the exception to this item; and decreed that the money expended by Robert Y. Ware, Jr., in building the storehouse on his wife's property, was the devotion of so

much of his own money to the payment of a debt which he owed to his wife, and was not a gift to her.

The complainants in each of the bills bring this appeal, and assign this final decree of the chancellor as error.

T. Scott Sayre, and Roquemore & White, for appellants.—The mere fact that a husband erects buildings on his wife's lands creates no legal presumption in his favor against her. It is well settled, that if a husband makes such improvements upon the lands of his wife in his possession, the law will presume that he intended it for her benefit, in the nature of a settlement upon her, and he can not recover for the same.—*Campion v. Cotton,* 17 Vesey, 272; *White v. Hildreth,* 32 Vt. 265; *Brevard v. Jones,* 50 Ala. 221; 1 Washburn on Real Prop., 3d Ed., 318; Schouler on Domestic Rel., § 203; *Burleigh v. Coffin,* 2 Fost. (N. H.) 118; Schouler's Hus. & Wife, § 425; 1 Roper Husband & Wife, 54; *In re Sturdevant,* 23 Atl. Rep. 826.

The burden of proof, in this case, is on Mrs. Ware, to show that she paid a valuable consideration for the house, and under the rules laid down in such cases, clearer and more conclusive proof is required of the consideration paid, and of the *bona fides* of the transaction, than if they were not husband and wife. The fact that appellants' debts against Ware existed prior to the building of the house, places the burden of proof upon Mrs. Ware, and she being the wife of Ware, the transaction will be more closely scrutinized, and clearer proof will be required to remove the burden than if she and Mr. Ware were strangers.—*Marx v. Leinkauff,* 93 Ala. 453; *Hubbard v. Allen,* 59 Ala. 301; *Gordon v. McIlwain,* 82 Ala. 252; *Pollak v. Searcy,* 84 Ala. 259; *Apfel v. Crane,* 83 Ala. 312; *Smith v. Collins,* 94 Ala. 394; *Calhoun v. Hannan,* 87 Ala. 277.

Tompkins & Troy, and Arrington & Graham, *contra.* The law, so far as property is concerned, recognizes the husband and wife as separate and distinct persons. Neither is responsible for the contracts or liabilities of the other, and we do not see why the same intendments should not be drawn from similar facts that would be

drawn were the transactions between strangers. But we are not bound to go to that extent. Here, Ware, a man at that time of small means, largely indebted to his wife, agrees to expend a large sum of money in improving her property. This is done with her knowledge and consent. We insist that under these circumstances, the law would presume a promise to refund the money so expended.—*Ex parte Ford*, 16 C. B. D. 307 : 3 Amer. & Eng. Encyc. of Law, 860 ; *Weston v. Davis*, 24 Me. 374.

But even if the circumstances stated above would not be sufficient to create an obligation on the part of the wife to refund the money, they are clearly sufficient to raise the presumption, independent of the express evidence on that point, that the husband intended the moneys so used in improving the wife's property to be applied as a payment on his indebtedness to her, and that she accepted it as such. And the law would hold it such a payment in the absence of evidence showing a contrary intention.—*Kelly v. Kelly*, 18 Amer. Dec. 710 ; *Sayles v. Olmstead*, 66 Barb. 590 and note ; *Hansen v. Kirtley*, 11 Iowa, 565 ; *Fletcher v. Manning*, 12 M. & W. 570 ; *Poucher v. Scott*, 98 N. Y. 422 ; *Duguid v. Ogilvie*, 3 E. D. Smith, 527.

HEAD, J.—The only question for decision, in these cases, is the one of fact whether the expenditure of his own funds by Robert Y. Ware, in the erection of the storehouse on his wife's land, was made, under an agreement with the wife, that the amount so expended should be deemed a payment *pro tanto* of the indebtedness then owing to her by him, for moneys of her separate estate which he, at sundry times, had received and appropriated. The register, upon a reference, found there was no such agreement. The chancellor, on exceptions, reversed that finding, in each case, and decreed that the agreement was established by the evidence. From those rulings these appeals are prosecuted. It can not be well questioned that, in the absence of proof of an agreement that the moneys so expended were to be repaid by her, or allowed as a credit on the indebtedness owing her by the husband, the presumption of law is that the investment was intended as a voluntary settlement upon the wife, and that, upon attack of the husband's existing

creditors, the burden is upon her to overcome that presumption by proof. See authorities on brief of appellant's counsel. The evidence upon the subject is reduced to narrow limits. It proceeds, we may say, entirely from Mr. and Mrs. Ware, themselves, as witnesses. In October, 1887, Mrs. Ware purchased a lot of five acres of land, in the town of Tallassee, Ala., with a dwelling house thereon, and she, with her husband, thereafter occupied the property as their residence. In the spring or summer of 1889, Ware, the husband, for the purpose of using it in carrying on a mercantile business therein, began the erection of a storehouse on this lot, locating it on the corner of the front yard of the premises. He exercised entire control and management of the erection, making all contracts for labor and materials, in his own name and behalf, and expended, in the building, after complainant's claims against him were contracted, the sum of $2,009.39 of his own funds. At this time, he owed his wife $4,474. These sums were ascertained by the register, upon the execution of a reference, after hearing very much testimony. The indebtedness to the wife consisted of $1,080 paid him by Mr. Storey, the step-father of Mrs. Ware, for her use, in the fall of 1880, and sundry sums of money received, at different times, the most of which being the proceeds of the property which he had previously given her. He began ordering goods for his mercantile business in the summer and opened up business about September 1st, 1889, when he had purchased some $8,400 worth on credit. The business proved so disastrous that he failed on the 2d day of October, 1889—an experience of one month. Of the goods on hand he applied enough to pay a debt of $2,000 to one Harrington, and to the payment of some other preferred creditors, amounts not given, and selected and retained $1,000 worth as exempt. This left nothing for his other creditors. On the 25th of January, 1889, he executed to his wife a promissory note for $1,200, payable 12 months after date, with interest, expressing that it was for rents of her property for 1888 and 1889; and on the same day, two other notes, one for $1,500 and the other for $1,640, both payable twelve months after date, with interest, and expressing that they were for money borrowed of her. The execution of these notes was the

result of a conference he had a few days before, with his attorney, to whom he related the facts, in detail, of his indebtedness to his wife, and whose advice he sought as to the best thing for him to do, in case of his death, or any other misfortune befalling him, to secure his wife. This building of the storehouse in question began about May, 1889, and was ready for occupancy, and was occupied by Ware, about September 1st, following. From 1882 to 1888, Ware had given to his wife, at sundry times, real and personal property, amounting to several thousand dollars in value. We have stated the foregoing undisputed history, as introductory to the evidence directly touching the subject of the alleged agreement between Mr. and Mrs. Ware, that the moneys expended by him, in building the storehouse, should go in payment *pro tanto* of his indebtedness to her. The testimony is not very lengthy, and we will state it all. Robert Y. Ware testified: "I built that house on the start on my wife's property, and she and I spoke of the house being built, and we walked around together and decided where to put and where to locate it. I wanted to put the house where it now stands, and she preferred me to put it at the rear of the building, but we finally decided for me to put it where it was put." Further on, speaking of his indebtedness to his wife, he said: "I have never accounted to my wife or paid her anything on those amounts prior to the commencement of the erection of this storehouse. I paid her in that building. I have not paid her anything in money since." Further on, he says: "There was no special understanding when I paid her back by this building that I should build it out of the money I owed her and had used. The only thing was just what I have told you; we went around together and decided where to put the house, and she told me where she wanted it put and agreed for me to put it where I did. This was all there was said about it. * * * There was nothing said about my paying rent for the new store when it was finished." After testifying at length as to the different sums paid by him for labor and materials for the building, he stated: "I have a memorandum of the most of the parties to whom I paid money on account of this building. This is an itemized account of it. (Witness produces small

pocket memorandum which he now consults.)    *   *   *
Ques. When was this book to which you are referring
made up? Ans. I couldn't tell you what day, but it
was recently. It was made up from bills and receipts
where I bought the material and things from. I did
bring some of those bills and receipts with me. They
are here. I showed you some of them. I refresh my
memory with that book. I knew that I had to testify,
and I got it up for that purpose, knowing I would have
to tell you what the goods cost. I have told you now
everything that I remember that that house cost.'' Fur-
ther on, he says: ''I footed up the cost of
the building, what it cost me up to the first of October
when I quit business, and it footed up $2,639.39. That
was all it cost up to that time; since then a few things
have been got here from Snow & Kennedy. That is to
the best of my recollection. I testify that that is the
cost of the building as near as I can get it up.   *   *   *
Various men have asked me what it cost, and some have
made some suggestions and some another, and I may
have told them various things; but I never knew myself
until I began to foot it up.   *   *   *   When I footed it
up it did not cost as much as I thought. The law suit
made me foot up the cost of the house. I had not done so
before. I hadn't footed it up until this suit was brought
and I had to answer the bill and I had to foot it up then.''
Without giving, in detail, the efforts of this witness to
show the several sums paid out in the construction of
the building, we remark that they show a demonstration
that no regular account was kept with a view of ascer-
taining what sum Ware would be entitled to credit for,
on his indebtedness to his wife, or for any other pur-
poses, and that his only means of ascertaining the cost
were such bills and receipts as he could get up, such *data*
as he could get others to furnish and his own personal
recollection, and that no effort was even made to get this
information until, and except for the purposes of this
litigation. If he was entitled to a credit on the claims
of his wife, the amount thereof was suffered to remain in
practical obscurity.

When Mrs. Ware was examined, the following ques-
tions were propounded to her by her counsel: ''Was
anything said to you by your husband, Robert Y. Ware,

Jr., relative to the erection of the storehouse upon your land? If yea, what was stated? What, if anything, was said about the manner in which you should pay for the erection of the same? State fully and particularly." To these questions she gave these answers: "The store was built in 1889 at my request by him, he superintended the building of the store. He built the store that it should be mine, and should be in part payment of the note he owed me. I consented he should put it in the corner of the front yard, on this account." On cross examination the following questions were propounded to her: "If in answer to the fifth direct interrogatory you say that anything was said to you by your husband relative to erection of a storehouse on your land, state the exact terms of any agreement made between your husband and yourself in relation to the building of such store. Was said agreement reduced to writing? If so, attach a copy. What was the date of such agreement? Out of what funds was your husband to erect said storehouse? Did he have, at that time, any means out of which to erect such storehouse? If he had, give an itemized list of such means or property as he may have had. Was it or not understood that he was to pay for said storehouse out of goods, wares or merchandise that he had bought or was to buy from merchants that year? Where else did you expect him to get money to erect the building? Where else did he get such money?" To which she replied: "The agreement to build the storehouse was not reduced to writing. The date of the agreement was in the spring of 1889. The terms of the agreement were that the store should be mine and in part payment of what he owed me. He used six hundred and odd dollars of my money in erecting the store. The balance was his own money. I can not give the itemized list of my husband's property asked for. It was not understood that he was to pay for the store out of goods, wares and merchandise. He had the money to erect the building."

The testimony of E. W. Story is referred to by counsel, but it sheds no light on this inquiry. It would serve no useful purpose to comment upon this evidence. To the mind accustomed to weighing evidence, it falls so far short of establishing the alleged agreement that com-

ment is unnecessary.  The complainants are entitled to
relief.  The law of the cases was settled on the former
appeals, (92 Ala. 145 and 152), except that considera-
tion of the specific form of relief was pretermitted.  We
hold that the complainants are entitled to have the rents
of the storehouse which have been  paid  into  court, if
any, by the tenants, Gibson and Patterson, or which are
due and owing by them, or which hereafter may become
due from them under their lease of the  storehouse, ap-
plied to the payment *pro tanto* of their claims, less the
interest therein of Mrs. Ware as hereinafter stated ; and
the chancery court will make such  orders  as  may  be
necessary to enforce collection of said rents, through the
register, and the proper application thereof.  Upon the
termination of the lease of said Gibson and Patterson,
by the expiration of its term  or otherwise, the chancery
court may, by proper  orders,  take  possession of said
storehouse, through its register, and rent out the  same
until the rents thereof, or the portions thereof which com-
plainants will be entitled to, shall be  sufficient  to  pay
the claims of complainants, making  such  orders  from
time to time, as may be necessary for  the  preservation
and protection of the  house,  including  its  insurance
against loss by fire, and relief from the  liens of  taxes ;
and for the proper application of the rents received ;  or
it may order the said house sold with the right and priv-
ilege in the purchaser, to  remove  the  same  from  the
premises of Mrs. Ware, and the proceeds applied to the
payment of complainants' claim, less the interst of Mrs.
Ware, as hereinafter stated.  It appears from the regis-
ter's report, which was confirmed, that the total  cost  of
the erection of the house was the  sum  of  $2,658.64  of
which the sum of $2,009.39 was expended by the debtor,
R. Y. Ware—the balance, $649.25,  being  the  funds  of
his wife, Mary H. Ware.  It is equitable, therefore, that
Mrs. Ware shall receive of the rents of  said  storehouse,
or the proceeds of its sale, which may be realized  under
the possession and orders of the  court,  the  proportion
which said sum of $649.25  bears  to  $2,658.64, the  total
cost of the building ; and that complainants shall receive
only the balance, and the chancery court will  so  decree.
The court will also, by its orders, protect the priorities of,
the parties suing.  On the expiration of the lease of Gib-

son and Patterson in any manner, it should be referred to the register to ascertain and report the best and most practicable method of realizing upon said storehouse, whether by leasing or selling the same, as herein indicated. The decree of the chancery court will be reversed, and the cause remanded with instructions to render a decree granting the complainants relief, and to make such other orders and decrees as may be necessary, in conformity with this opinion. The defendants will be taxed with the costs in this court and in the court below, and the chancery court may order the same paid out of the share of rents, or proceeds of sale, going to Mrs. Ware.

Reversed and remanded.